The STATE of Ohio, Appellant,

v.

THOMPSON, Appellee.

[Cite as *State v. Thompson* (1999), 134 Ohio App.3d 1.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 17660.

Decided June 25, 1999.

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, and *Andrew T. French*, Assistant Prosecuting Attorney, for appellant.

*Thomas George Edward Mathewson*, for appellee.

---

BROGAN, Judge.

John F. Thompson was indicted for drug abuse in violation of R.C. 2925.11(A). The trial court granted the defendant's pretrial motion to suppress the evidence of the drugs on which he was indicted. The state appeals that decision pursuant to Crim.R. 12(J).

The facts developed at the suppression hearing are set out in the state's brief and are supported by our review of the record.

On the evening of December 26, 1998, Officer Walter Evans of the Dayton Police Department was on routine patrol in the Fairground–Rubicon neighborhood when he witnessed a vehicle being driven by appellee, John Thompson, exit an alley. Because appellee's vehicle was leaving a high-drug area, Officer Evans decided to run the license plate number of appellee's vehicle through the computer. In attempting to do so, Officer Evans noticed that the light around appellee's license plate was not working, so he effected a traffic stop for the purpose of issuing appellee a citation.

Officer Evans and his partner, Officer Mucho, approached the vehicle and obtained identification from both appellee and his passenger. Upon running the names through the computer in his cruiser, Officer Evans discovered that the passenger, Thompson's wife, had an outstanding warrant for her arrest. Therefore, Evans returned to the vehicle and arrested the passenger.

While the arrest of the passenger was in progress, Officer Cowalski arrived on the scene and announced that gunshots had been heard coming from the area where appellee's vehicle had been seen leaving. Officer Cowalski approached appellee and inquired whether appellee had heard the shots; he stated that he had. Officer Cowalski then asked appellee if he would consent to a search of his vehicle for weapons. Appellee stated that while he had no weapons, the police could search his vehicle if they so desired. Officers Evans and Cowalski conducted the search.

During the search, Officer Evans noticed that the cover to one of the air vents on the vehicle's dashboard had been removed, resulting in a hole large enough to conceal a small handgun. Officer Evans proceeded to look inside the opening and observed a contact lens case. Based upon the unusual location where the lens case was found and from Officer Evans's experience that drug users often keep their crack cocaine inside such cases, he removed the contact case from the vent

and discovered that it indeed contained crack cocaine. Appellant was subsequently arrested on drug possession charges and issued a citation for the license plate light.

The trial court made thorough findings of fact and conclusions of law to support its decision to suppress the evidence. The trial court found that Officer Cowalski had requested permission from the defendant to search the vehicle for weapons. The court did not find credible Cowalski's testimony that he had also requested permission to search for contraband. The court also found that Officer Evans testified that he has many times found drugs inside containers, but he did not testify how often they are hidden in contact lens cases. The court noted that Evans's suspicion was heightened by the fact that the contact lens case was found in such an odd location.

The court found that Thompson's consent permitted the officers to search any area in the vehicle in which a firearm could be hidden. The court noted that a firearm cannot be hidden in a contact lens case. Therefore, the court found the search of the container unlawful. The trial court found that the state had failed to establish that the search of the container was legally justified under the "plain view" exception. The trial court noted:

"It is the third element of the 'plain view doctrine'—probable cause—that the State has failed to establish. Officer Evans had reason to suspect that the contact lens container contained drugs, since it was in an odd location—inside an open air vent—and since drugs often are hidden in containers. As the Assistant Prosecutor stated in closing argument, this amounted to reasonable suspicion to believe that a drug was within the contact lens container. However, reasonable suspicion is insufficient under the 'plain view doctrine'; probable cause is required. The State having failed to establish that Officer Evans had probable cause to believe that contact lens container contained drugs, the seizure and search of the container cannot be upheld under the 'plain view doctrine.' "

In its sole assignment of error, the state argues that the trial court erred in not finding that the search of the contact lens case was valid pursuant to the "plain view" exception to the warrant requirement.

The state argues that the incriminating nature of the contact lens case was "immediately apparent" to Officer Evans and thus his search of the case for drugs was lawful, citing *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.

In *Texas v. Brown* (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502, the United States Supreme Court held that the police officer's knowledge and experience gave him probable cause to believe that a tied-off opaque balloon, in

**4**

plain view in a lawfully stopped car, contained illegal drugs, and thus satisfied the "immediately apparent" requirement of the plain view doctrine.

In *Texas v. Brown,* a police officer, conducting a routine driver's license checkpoint, stopped the defendant's car and observed in the defendant's hand an opaque, green party balloon, knotted about one-half inch from the tip. The officer then shifted his position so that he could see into the open glove compartment and noticed several plastic vials, quantities of a white powder, and an open bag of party balloons. The officer seized the balloon, which the defendant had dropped to the floor of the car, and noticed a powdery substance within the tied-off portion of the balloon. The officer testified at the suppression hearing that, based on his previous experience in arrests for drug offenses, he was aware that narcotics are frequently packaged in balloons. The Texas Court of Criminal Appeals reversed the conviction, finding that it was not immediately apparent to the officer that the balloon contained narcotics. Justice Rehnquist, for the plurality, characterized the Texas court's standard to mean that the officer must be possessed of near certainty as to the sizeable nature of the items. All nine of the justices rejected near certainty as too demanding a standard.

Instead, the court found that the police officer need not know that the items in plain view are contraband or evidence of a crime. It is sufficient, according to the Supreme Court, that probable cause exist to associate the property with criminal activity. In reaching the conclusion that the officer had probable cause to believe that the balloon contained narcotics, the court relied on *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621, and held that the facts are to be reviewed in a manner allowing for all of the inferences that would be drawn by one versed in the field of law enforcement.

In *Arizona v. Hicks* (1987), 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347, the court held that probable cause that an item in plain view contains contraband justifies a search of that object. The Ohio Supreme Court has found that "[t]he 'immediately apparent' requirement of the 'plain view' doctrine is satisfied when police have probable cause to associate an object with criminal activity." *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 25 OBR 360, 496 N.E.2d 925, paragraph three of the syllabus. Probable cause to associate an object with criminal activity does not demand certainty in the minds of police, but instead merely requires that there be "a fair probability" that the object they see is illegal contraband or evidence of a crime. *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus.

The state argues that under the totality of circumstances confronted by Officer Evans, he had probable cause to believe the contact lens container contained crack cocaine. Specifically, the state notes that Thompson's car was seen leaving an alley in a high-crime area, Evans testified that he has known drug users to

keep their crack cocaine inside contact lens cases, and the case was found in an unusual location. In *State v. Anderson* (Jan. 11, 1999), Montgomery App. No. 17205, unreported, 1999 WL 6375, this court recently found that the incriminating character of a wad of paper was immediately apparent based upon the totality of the circumstances under which it was discovered (sitting on the driver's seat next to a crack pipe and in the location police had witnessed defendant making furtive movements). This court has additionally found that the incriminating character of a clear gelatin capsule was immediately apparent because of three prevailing factors: the officer's experience with finding drugs in such containers, the high-drug area where the discovery was made, and the location of the capsule on the floorboard of the vehicle near the gas pedal, "an unlikely location for a legitimate pharmaceutical item." *State v. Paschal* (Aug. 2, 1996), Montgomery App. No. 15394, 1996 WL 430870, unreported. Furthermore, we noted that there was no evidence that the capsule contained markings that would identify it as a legitimate item. It was not in a container in which legitimate pharmaceutical items are sold. Judge Wolff observed on behalf of this court:

"Paschal had picked up a woman just a short distance from where she had been refused access to a known crack house. It would seem obvious that Officer House, who had worked the area for three years, was aware of drug activity in the immediate vicinity. Officer House had observed in connection with past drug law enforcement activities that gelatin capsules are used to hold illegal substances. The capsule he observed was about a quarter full of white powder, whereas capsules of legitimate substances are usually close to full. The location of the capsule on the floorboard, and the apparent lack of commercial marking on the capsule, were both indicative of an illegal substance. Officer House definitely ruled out the possibility that the capsule was a CONTAC. In our judgment, these facts established probable cause as a matter of law. *Brown, supra.*"

In *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911, the court held that as a general matter determinations of reasonable suspicion and probable cause should be viewed *de novo* on appeal. The court held that a reviewing court should take care to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.

We agree with the trial court that Officer Evans had reason to suspect that the defendant might have crack cocaine in the contact lens case, but not probable cause for that belief.

Although Evans testified that he had known drug users to keep crack cocaine inside contact lens cases, he didn't testify how often this occurs. Unlike in

**6**

*Paschal,* the drug was not in plain sight where the capsule's lack of markings identified it as illegitimate. Accordingly, the assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FAIN and FREDERICK N. YOUNG, JJ., concur.