OPINION
Defendant, Christopher Durham, appeals from his conviction and sentence for unlawful possession of a dangerous ordnance., Defendant was indicted on one count of Unlawful Possession of a Dangerous Ordnance, a sawed-off shotgun, in violation of R.C. 2923.17(A). Defendant filed a motion to suppress both the physical evidence and statements he had made to police. Following a hearing, the trial court overruled Defendant's motion to suppress in its entirety. Defendant entered a no contest plea, was found guilty, and was subsequently sentenced by the trial court to five years of community control sanctions., Defendant has now timely appealed to this court, challenging the trial court's overruling of his motion to suppress.
When reviewing a trial court's suppression ruling, an appellate court must accept as true the trial court's findings of fact if they are supported by competent, credible evidence in the record. Then, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether those facts meet the applicable legal standard. State v. Retherford (1994), 93 Ohio App.3d 586.
The record in this case supports the trial court's findings of fact which provide in relevant part as follows:
 On December 8, 1999, at about 8:00 p.m., a privately monitored burglar alarm went off at the Defendant's residence at 1737 Kipling Drive, Dayton, Ohio. Dayton Police Officers Rodney D. Hughes and Jack Simpson were partners on that date and they were dispatched, by the Dayton Police Dispatcher, to the Defendant's residence on a burglar alarm call. When the officers arrived, they performed a perimeter check around the residence and found the back door smashed in with pieces laying on the steps. Officer Hughes felt there was a good chance of catching someone inside because it was a short time since the dispatch and the alarm was still going off upon arrival. Hughes and his partner entered the house and began looking for intruders. The house was found to be in great disarray and had been ransacked. While looking for an intruder in the house an SKS type assault weapon was observed in an open closet. A gas mask was found in the vicinity. Hughes continued looking for an intruder in the residence and, therefore, when he entered a bedroom (that was set up like an office) he looked behind the door to see if an intruder was present. There he observed what he described as a "sawed-off shotgun" that looked "shorter than it was supposed to be." He could tell that the shotgun was sawed-off because the barrel was not smooth. He stated that the legal length for a shotgun is 26 1/2" in total length and the barrel must not be less than 18".
 An Evidence Crew was called to the scene a considerable time after discovery of the weapon and the barrel of the shot-gun was measured by another officer using the Evidence Crew's measuring tape. The barrel was found to be 16 1/2" long. The Defendant was subsequently charged with this offense, possession of a sawed-off shotgun.
 Eventually, for charges not related to this offense, a search warrant was obtained for the Defendant's premises and a search was conducted. However, in the meantime, the Defendant, Christopher Durham arrived. He was allowed to walk around the house in the presence of officers, but he was not initially told that he was being investigated. At this point, Hughes indicated that the Defendant was just being asked general questions. The Defendant was questioned about the shotgun and the Defendant acknowledged that it was his shotgun and he stated that it had broken and that he had sawed it off to fix it. Hughes denied there was any indication to the Defendant at that time that he was in custody, the Defendant had free movement around the house, although in the presence of officers, and Hughes believed that he used the restroom during that time. Quite sometime thereafter, the Defendant was eventually placed in custody and read his Rights by Officer Simpson.
 The non-custodial nature of the discussions with Christopher Durham were confirmed by his witness and fiancee', Jamie Ivory. She testified that the officers asked the Defendant whether he knew there was sawed-off shotgun in the house. At this point, there was other conversation about the residence and the officers were joking with Chris. She further testified it was two and half hours before the Defendant was put in a police car.
(Decision and Entry filed May 3, 2000, overruling Defendant's motion to suppress.)
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED, AND VIOLATED THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION, WHEN IT FAILED TO SUPPRESS EVIDENCE OF THE SAWED OFF SHOTGUN, BECAUSE THE OFFICERS DID NOT FIRST HAVE A SEARCH WARRANT BEFORE MEASURING THE GUN TO DETERMINE IF ITS POSSESSION WAS ILLEGAL.
Defendant argues that when police initially observed his sawed-off shotgun behind a partially open bedroom door inside his residence while searching for a burglar, the incriminating nature of that object was not immediately apparent. Rather, police had to first measure the barrel of that shotgun before determining that it was too short and therefore illegal to possess. Accordingly, because the requirements of the plain view doctrine were not satisfied, police could not therefore seize the shotgun without a warrant. Therefore, their subsequent conduct in manipulating that shotgun and measuring its barrel to determine whether it was legal constituted a warrantless search that violated Defendant'sFourth Amendment rights. Arizona v. Hicks (1987), 480 U.S. 321.
For the plain view exception to the Fourth Amendment's search warrant requirement to apply, the court must find that (1) the initial intrusion which afforded authorities the plain view was lawful, (2) the discovery of the evidence was inadvertent, and (3) the incriminating nature of the evidence was immediately apparent. Coolidge v. New Hampshire (1971),403 U.S. 443; State v. Williams (1978), 55 Ohio St.2d 82., Defendant concedes that the first two requirements have been satisfied: police had a right to enter Defendant's home in response to an active burglar alarm and to search behind the partially open bedroom door to see if the burglar was hiding there. The only question is whether the incriminating nature of the sawed-off shotgun police discovered when they looked behind that bedroom door was "immediately apparent." That requirement is satisfied if police have probable cause to associate the object with criminal activity. State v. Thompson (1999), 134 Ohio App.3d 1 . Probable cause in the plain view context does not require certainty or proof beyond a reasonable doubt. It merely requires a "fair probability" that the object seen is contraband or evidence of a crime. Id., Defendant argues that because the barrel of his shotgun was only one and one-half inches shorter than the legal limit when measured by police, Officer Hughes did not have a fair probability or probable cause to believe that the weapon was illegal when he first observed it, but only a suspicion. We disagree. Officer Hughes described what he saw when he looked behind the bedroom door as "a sawed-off shotgun." Officer Hughes could tell the shotgun was sawed-off because the barrel was not smooth and one could tell by looking at it that the barrel was shorter than it was supposed to be. While Officer Hughes was not certain the weapon was illegal until it was measured some time later, it appeared to be illegal in that it was shorter than it should have been.
This evidence is sufficient to establish a fair probability that the shotgun Officer Hughes observed was illegal contraband. In other words, the incriminating nature of this object was immediately apparent. Accordingly, the requirements of the plain view doctrine were satisfied and the warrantless seizure of this shotgun and the subsequent measuring of the barrel did not violate the Fourth Amendment. Arizona v. Hicks, supra.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN NOT SUPPRESSING THE STATEMENTS.,
Defendant argues that his statements he made to police, admitting that the shotgun belonged to him and that he had sawed it down should have been suppressed by the trial court because police failed to advise Defendant of his Miranda rights before questioning him about the shotgun.
The duty of police to advise a suspect of his rights pursuant to Miranda v. Arizona (1966), 384 U.S. 436, only arises when the suspect is subjected to "custodial interrogation." Id; State v. Gumm (1995),73 Ohio St.3d 413 . There is no question that Defendant's inculpatory statements to police in this case were the product of interrogation by the police. Thus, the only question is whether Defendant was "in custody" at that time.
To be "in custody," there must be a formal arrest or restraint on freedom of movement to a degree associated with formal arrest. California v. Beheler (1983), 463 U.S. 1121; State v. Mason (1998), 82 Ohio St.3d 144. The test is an objective one; given the totality of the circumstances, whether a reasonable person would have believed that he/she was not free to leave. Berkemer v. McCarty (1984), 468 U.S. 420; Gumm, supra. The subjective beliefs of the officer and the suspect are irrelevant. Stansbury v. California (1994), 511 U.S. 318.
Prior to Defendant's arrival at his residence, police had already found the shotgun, measured its barrel and determined that it was illegal to possess it. In questioning Defendant about this shotgun, police asked Defendant if he knew there was a sawed-off shotgun in his home. Thereafter, Defendant admitted that the shotgun belonged to him and that he had sawed it down. Defendant argues that when he made these statements he realized that the police knew he had violated the law. Therefore, a reasonable person in his position would not have felt free to leave. Thus, Defendant was "in custody" and should have been given Miranda warnings before being questioned.
When Defendant first arrived at his residence he was understandably very upset about his home being burglarized. Police allowed Defendant to walk through his home to determine what had been stolen in the burglary, but officers accompanied him because of the guns discovered in the back bedroom and Defendant's agitated state. Defendant was allowed to use the restroom and go outside unaccompanied by the officers.
After Defendant had calmed down, police asked him about the shotgun. Defendant was sitting on the couch in the living room of his home at that time. Some officers were present in that room, but there were no handcuffs or other restraints on Defendant. The burglary investigation was still going on, and police were also asking questions about that. Police did not tell Defendant that he was being investigated because of weapons found in the house, that he was not free to leave, or otherwise give Defendant any reason to believe he was in custody. Only after Defendant admitted that the gun belonged to him and he was the person who had sawed it down was he no longer free to leave. Moreover, a substantial period of time elapsed after Defendant's statements before he was finally handcuffed and placed in a police cruiser.
Considering the totality of these circumstances, a reasonable person in Defendant's position would not consider himself in custody, a restraint on his freedom of movement equivalent to an arrest, at the time Defendant's statements were made to police. Therefore, Miranda warnings were not required.
The second assignment of error is overruled.
 Conclusion
Having overruled the assignments of error presented, we will affirm the judgment from which this appeal was taken.
 __________ GRADY, J.,
WOLFF, P.J. and FAIN, J., concur.