OPINION
{¶ 1} Plaintiff-appellant the State of Ohio appeals from an order suppressing evidence. The State contends that the trial court erred by suppressing the evidence because, when the evidence adduced at the suppression hearing is viewed in a light most favorable to defendant-appellee James Jones, the trial court could only reasonably find that the incriminating nature of the evidence felt by the police officer during a pat-down was immediately apparent.
 {¶ 2} Although the issue is close, we conclude otherwise. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} The trial court made the following findings of fact:
 {¶ 4} "On December 7, 2001, Officer Sean Emerson, an officer on the DMHA Task Force, was patrolling an area between Germantown Street and Stewart Street on Danner Avenue. At roll call that evening, Detective August alerted the officers on patrol in that vicinity of increased drug activity at 819 Danner Ave. During patrols, Officer Emerson noticed two people, a male, later identified as the Defendant, and a female, sitting on the back porch at 819 Danner Avenue. After seeing the same two people sitting on the porch on a subsequent patrol, Officer Emerson then approached the two notifying other officers in the area that he was going to conduct a Field Interrogation. . . . Upon attempting to approach, both people left the porch and proceeded to walk south on Danner toward Stewart Street. Next, the female then began to walk southwest on Danner and the Defendant proceeded south.
 {¶ 5} "Officer Emerson followed the Defendant and asked if he could talk with him. The Defendant, now turned and looking at Officer Emerson, put his hand behind his back. Officer Emerson, fearing for his safety, unsnapped and drew his weapon. Further, he requested that the Defendant put his hands where they could be seen. In response, the Defendant raised his hands with his wallet in the hand that had been behind his back. Officer Emerson then asked if he could conduct a pat down search of the Defendant for his own safety. While testimony on the response is conflicting, the Court finds Officer Emerson's testimony more credible and, therefore, finds that the Defendant consented to a pat down search. Upon the pat down search, Officer Emerson felt a long, hard object in the Defendant's pocket that he immediately knew to be a knife. This instrument was removed from the Defendant's pocket for the safety of Officer Emerson.
 {¶ 6} "Next, about two inches above the Defendant's left ankle bone, the Defendant felt an object that he described as `squishy.' Officer Emerson stated that, `It felt like a baggie.' Officer Emerson asked the Defendant what the object was and the Defendant responded that `it was nothing.' Acting pursuant to his experience that illegal narcotics are often kept in baggies, Officer Emerson lifted the Defendant's pant leg and rolled down his sock about two inches removing the baggie. Upon having the baggie removed from his sock, the Defendant told Officer Emerson that `he had already smoked what was in there' and asked if the Officer could give him `a break.' "While no readily identifiable quantity of drugs were detected, Officer Emerson saw residue inside the baggie. A field test of the residue confirmed that the residue was cocaine. Upon this, the Defendant was placed under arrest."
 {¶ 7} Jones was indicted on one count of Possession of Crack Cocaine, in an amount less than one gram, a felony of the fifth degree. He moved to suppress the evidence seized by the police, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing on this motion, the trial court granted the motion, and suppressed the evidence. From the order suppressing the evidence the State appeals.
 II {¶ 8} The State's sole assignment of error is as follows:
 {¶ 9} "IN CONCLUDING THAT THE INCRIMINATING CHARACTER OF THE PLASTIC BAGGIE WAS NOT `IMMEDIATELY APPARENT' TO THE OFFICER, THE TRIAL COURT FAILED TO GIVE PROPER CONSIDERATION TO THE TOTALITY OF THE CIRCUMSTANCES UNDER WHICH THE BAGGIE WAS DISCOVERED. THUS, THE TRIAL COURT ERRED IN SUPPRESSING THE EVIDENCE."
 {¶ 10} While a police officer is conducting a lawful pat-down search for weapons, the officer may retrieve any contraband or incriminating evidence that he feels during the course of the pat-down, as long as the incriminating character of the contraband is immediately apparent to the officer through his sense of touch. Minnesota v.Dickerson (1993), 508 U.S. 366, 375-376, 113 S.Ct. 2130,124 L.Ed.2d 334. In this context, an object's incriminating character is immediately apparent if the police officer has probable cause to associate the object with criminal activity. State v. Halczyszak (1986), 25 Ohio St.3d 301,496 N.E.2d 925, paragraph three of syllabus. Probable cause to associate an object with criminal activity does not demand certainty in the minds of police, but instead merely requires that there be a "fair probability" that the object they see [or feel] is illegal contraband or evidence of a crime. State v. Thompson (1999), 134 Ohio App.3d 1, at 4, 729 N.E.2d 1268.
 {¶ 11} The State contends that it succeeded in proving, at the suppression hearing, that the incriminating character of the object felt in Jones's sock, two inches above his ankle, was immediately apparent to Officer Emerson, in the sense that there was probable cause to associate it with criminal activity. In making this argument, the State points to Emerson's three-year experiences as a police officer, in which he has made more than 50 arrests in which suspects were carrying drugs. Emerson testified that in 90% of those cases, the drugs were being carried inside a plastic baggie. The State points out that the baggie was in an unusual location for someone to be legitimately carrying a baggie, and that Jones had just left an address that Emerson had been advised was showing an increase in drug activity.
 {¶ 12} On the other hand, Emerson testified that he could not feel any object within the baggie.
 {¶ 13} Emerson's testimony is worth recounting in some detail:
 {¶ 14} "A. While I was patting him down the rest of the way, I felt a bulge in his left sock.
 {¶ 15} "Q. Mmm Hmm.
 {¶ 16} "A. And I asked `im what it was and he stated — I believe his quote was: `That? Oh nothin'.'
 {¶ 17} "Q. Okay. Uh . . . you know as people get older they sometimes have, uh . . . corns and bunions and things like that. This didn't feel like a corn or a bunion, did it?
 {¶ 18} "A. No. It, uh . . . — it actually, when I — when I felt it i — it felt like a — a small bulge. Many times we'll find people that — that do have drugs on `em and they keep it in — in plastic or, uh . . . baggies. And it felt just — a bulge just like that.
 {¶ 19} "Q. All right. Was it on an ankle? Was it behind the ankle at the Achilles tendon? Was it in the front?
 {¶ 20} "A. It was on the — on the side of his leg, the inside part of his leg, uh . . . on that side down probably two inches above the ankle bone.
 {¶ 21} "Q. Above the ankle?
 {¶ 22} "A. Mmm Hmm.
 {¶ 23} "Q. Okay. So you asked the Defendant what that was. And, uh . . . did you have an opinion as to what it was when you felt it?
 {¶ 24} "A. Yeah, I believed it — like I said, that it felt like a — a — a baggie `cause it was squish — it was squishy like that and it felt like a baggie.
 {¶ 25} "Q. Mmm Hmm. And why is the fact it's a baggie of any significance, if you know?
 {¶ 26} "A. Uh . . . practically everyone that carries drugs will — will keep it in a baggie. That's just the — the common way of — of keeping drugs.
 {¶ 27} "Q. Have you made arrests, uh . . . in the past of people that were, for lack of a better term, holding drugs?
 {¶ 28} "A. Yes.
 {¶ 29} "Q. How many times?
 {¶ 30} "A. Uh . . . numerous. I don't know.
 {¶ 31} "Q. More than ten? More than twenty? More than a thousand?
 {¶ 32} "A. Uh . . . drug arrests?
 {¶ 33} "Q. Yes, sir.
 {¶ 34} "A. Probably in the three years I've been working, there's been over fifty.
 {¶ 35} "Q. Okay. And of those, uh . . . were some of them situations where you felt, uh
 {¶ 36} . . . — or patted someone down to retrieve the item?
 {¶ 37} "A. Yes.
 {¶ 38} "Q. How many of those?
 {¶ 39} "A. Uh . . . you — d- — just during the pat-down and finding . . .
 {¶ 40} "Q. Yes.
 {¶ 41} "A. . . . the drugs? Probably, uh . . . sixty percent of those.
 {¶ 42} "Q. Okay. And of those — I won't ask you to give us any more statistical information, but of those, uh . . . many of them had plastic bags around them?
 {¶ 43} "A. Oh, yeah. Almost — almost ninety percent of `em are. Some people will keep it in — in, like, a piece of paper wrapped up, but ninety percent, they use plastic bags.
 {¶ 44} "Q. Can you define for us with your hand, if possible, the size of that bulge?
 {¶ 45} "A. Uh . . . it was probably — [Indicating] — — when you take a — a single plastic baggie and rol- — and wad it up . . .
 {¶ 46} "Q. Mmm Hmm.
 {¶ 47} "A. . . . you know, it probably makes a wad about like that — [Indicating].
 {¶ 48} "Q. Would you say it was an inch in diameter?
 {¶ 49} "A. At least, yeah. Probably.
 {¶ 50} "Q. Okay. And, uh . . . so after you feel that and after the Defendant says: `Oh, that's nothing' what'd you do?
 {¶ 51} "A. Well, by him saying it was nothing, it seemed a little suspicious `cause obviously it was something.
 {¶ 52} "Q. Mmm Hmm.
 {¶ 53} "A. And, uh . . . I went ahead and recovered it and it was, indeed, a baggie that had, uh . . . some — what appeared to be crack residue inside of it."
 {¶ 54} In its decision granting the motion to suppress, the trial court concluded that the pat-down was consensual, but that Emerson lacked probable cause to believe that the object in Jones's sock, which Emerson had testified felt "squishy, like a plastic baggie," was incriminating evidence.
 {¶ 55} Although Emerson testified that when drugs are found on a suspect's person, 90% of the time they are found in a plastic bag, it does not follow that most plastic bags contain drugs. Plastic bags are a popular container for many items. It would not surprise this court if, when ham sandwiches are found on a suspect's person, 90% of the time they are contained in a plastic bag.
 {¶ 56} Emerson did not testify that the inside of a worn sock is a favored place to carry drugs. Members of this court can recall when the rolled up sleeve of a t-shirt was a place often used to carry a cigarette pack. In the absence of evidence that worn socks are a popular place to carry drugs, this court will not presume that fact. Compare Dickerson v.United States (D.C.App., 1996), 677 A.2d 509, where testimony indicated that the crotch area is a popular location for illegal drugs being carried about the person.
 {¶ 57} Although Emerson had been alerted, along with other officers, that the location where Jones was found "was showing a lot of drug activity," the particular basis for this conclusion was never established. There was no particularized suspicion that Jones was involved with illegal drugs.
 {¶ 58} The only thing that was immediately apparent to Emerson while patting down the area of Jones' sock was that there was a plastic baggie inside the sock. He could not feel anything inside the baggie. Emerson testified that when he asked Jones what that was, and Jones told him, "That? Oh nothin'," Emerson was "a little suspicious `cause obviously it was something." What it was was an empty plastic baggie — empty except for some residue. Jones' having referred to the empty container as "nothin'" is not sinister, since Jones may reasonably have understood the inquiry to concern the contents of the baggie, rather than the baggie itself.
 {¶ 59} We recognize that a police officer's tactile sensation can be combined with other circumstances known to the officer to establish probable cause for a search and seizure. See United States v. Aguiar (4th Cir., 1987), 825 F.2d 39, where the suspect's having traveled from a source city for illegal drugs, on a one-way ticket issued under a false name, paid for with cash, with no baggage, combined with a large bulge at the suspect's left ankle, was held to satisfy the probable cause requirement.
 {¶ 60} In the case before us, although the issue is close, we conclude that the facts and circumstances known to Emerson, when combined with his having felt, during a pat-down search, an object in Jones' sock that felt like a plastic baggie, but without Emerson being able to feel anything inside the baggie, fell short of probable cause for a search. Accordingly, the State's sole assignment of error is overruled.
 III {¶ 61} The State's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
GRADY and YOUNG, JJ., concur.