[Cite as *State v. Bales*, 2012-Ohio-4968.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                          :
                                       :        Appellate Case No. 24897
        Plaintiff-Appellee             :
                                       :        Trial Court Case No. 2010-CR-3951
v.                                     :
                                       :
JUSTIN A. BALES                        :        (Criminal Appeal from
                                       :         Common Pleas Court)
        Defendant-Appellant            :
                                       :

· · · · · · · · · · ·

O P I N I O N

Rendered on the 26th day of October, 2012.

· · · · · · · · · · ·

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ADRIAN KING, Atty. Reg. #0081882, Adrian King Law Office, LLC, 36 North Detroit Street, Suite 104, Xenia, Ohio 45385
        Attorney for Defendant-Appellant

· · · · · · · · · · · ·

CELEBREZZE, JR., J. (By Assignment):

{¶1} Defendant-appellant, Justin Bales, appeals from his conviction and sentence for

possession of heroin and drug abuse instruments following a no-contest plea. Appellant contends that the trial court erred in denying his motion to suppress evidence because the evidence was seized as a result of an illegal search by the police officer. After careful review of the record and relevant case law, we affirm the judgment of the trial court.

{¶2} On June 3, 2011, appellant was indicted by the Montgomery County Grand Jury on charges of possession of heroin, in violation of R.C. 2925.11(A), a felony of the fifth degree; and possession of drug abuse instruments, in violation of R.C. 2925.12(A), a misdemeanor of the second degree. On July 8, 2011, appellant filed a motion to suppress the heroin and syringe recovered from his sock, arguing that he was stopped and searched illegally. An evidentiary hearing was held to review appellant's motion to suppress on August 30, 2011.

{¶3} At the evidentiary hearing, the following facts were presented to the trial court: On December 10, 2010, Dayton Police Officers Christopher Malson and Rod Roberts were on patrol in the area of Salem Avenue and Cornell Drive in Dayton, Ohio. The officers were watching an alley located off Cornell Drive that is associated with numerous drug complaints. While on patrol, the officers observed a white vehicle pull out of the alley onto Cornell Drive. At that time, the officers ran the vehicle's license plate and discovered that appellant, the registered owner of the vehicle, had recently been stopped in high drug activity areas in the city of Dayton. The officers followed the vehicle as it approached the downtown area, and when appellant failed to signal a lane change, the officers initiated a traffic stop.

{¶4} As Officer Malson approached appellant's vehicle, he observed the female passenger moving around in the vehicle. Officer Malson testified that the female passenger

was turning her shoulders in a way that suggested she might be manipulating or trying to place an object in the center console. This heightened Officer Malson's concern that the passenger might be concealing a weapon. Because of this concern, Officer Malson asked appellant to step out of the vehicle, patted him down for weapons, and placed him into the rear of the cruiser. Officer Malson testified that he secured appellant in the cruiser because of the movements the passenger made and the possibility that weapons were being exchanged or hidden inside the vehicle.

{¶5} Officer Malson then received appellant's permission to search his vehicle. The female passenger was asked to sit in the rear of the cruiser with appellant while the search was conducted. The female passenger was not patted down prior to entering the cruiser because Officer Malson was waiting for a female officer, Officer Benge, to arrive to conduct the pat down. While searching appellant's vehicle, Officer Malson discovered cut-up pieces of cigarette filters. Officer Malson testified that, in his experience, cut-up cigarette filters are used by heroin users to filter their heroin into hypodermic needles.

{¶6} Once Officer Benge arrived at the scene, she and Officer Malson went to the back of the cruiser to remove the female passenger. As they approached the cruiser, they observed the female passenger manipulating objects inside the front of her pants and in her crotch area. She was quickly removed from the cruiser and asked to remove the item she had inside her pants. The female passenger removed a hypodermic needle from her front pocket and was placed under arrest.

{¶7} At that point, Officer Benge decided to conduct a second pat down on appellant for safety purposes. Officer Benge testified that she was concerned that the female passenger

may have handed appellant a weapon while they were unhandcuffed in the back of the cruiser. Officer Benge explained that

> weapons are synonymous with drugs. They go hand and hand. And since she [the passenger] had a needle on her and he [appellant] was sitting there in the cruiser unhandcuffed, we wanted to make sure he didn't have any weapons or anything on him. * * * It heightened [my concern] the fact that she [the passenger] had a drug needle on her. We knew that, you know, obviously they've been involved in something.

{¶8} Officer Benge had appellant exit the cruiser and sit on the curb. When appellant sat on the curb, his pant legs raised up, revealing a bulge in the inside of his sock near his left ankle. Because of the hypodermic needle that was just recovered from the female passenger and the passenger's movements while in the vehicle and in the cruiser, Officer Benge testified that she believed the bulge was "more than likely going to be the same contraband that his passenger had." Officer Benge testified that she did not pat down the "bulge" because the passenger's hypodermic needle had been uncapped, and she "did not want to get poked." Officer Benge requested appellant to remove his shoes and socks and had him hand the left sock to her. When she looked inside the sock, Officer Benge discovered a hypodermic needle and a capsule of heroin.

{¶9} Based on the testimony provided at the suppression hearing, the trial court overruled appellant's motion in its entirety on September 28, 2011. On October 5, 2011, appellant pled no contest as charged and was subsequently sentenced to community control sanctions.

{¶10} Appellant now brings this timely appeal, raising one assignment of error for review.

Law and Analysis

{¶11} In his sole assignment of error, appellant argues that the trial court erred in overruling his motion to suppress.

{¶12} In regard to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id*.

{¶13} We find that the trial court's findings of fact were supported by competent and credible evidence. Accordingly, we turn to the constitutionality of the search and seizure.

{¶14} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. Although Ohio citizens are afforded protection by both the U.S. Constitution and the Ohio Constitution, the Ohio Supreme Court has largely interpreted the protections afforded by Article I, Section 14 of the Ohio Constitution as "coextensive with those provided by the

United States Constitution." *State v. Robinette*, 80 Ohio St.3d 234, 238, 1997-Ohio-343, 685 N.E.2d 762. Thus, we will analyze appellant's Ohio Constitutional rights under the U.S. Constitution's Fourth Amendment jurisprudence.

{¶15} If an individual's right against unreasonable searches and seizures is violated, the evidence obtained as a result of the violation is subject to exclusion. *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). While the Fourth Amendment does not contain an express mandate that evidence seized as a result of an illegal search be suppressed, suppression is inherent in the amendment's language. *Id.*, citing *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). "The [exclusionary] rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *Id.*, quoting *Calandra* at 348.

{¶16} In general, in order for a police officer to search a person, the officer must possess a warrant. *Arnold v. Cleveland*, 67 Ohio St.3d 35, 45, 616 N.E.2d 163 (1993). However, there are a number of specifically established exceptions to this general rule. A police officer may briefly stop and detain an individual without an arrest warrant or probable cause for an arrest in order to investigate the officer's reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In doing so, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991), citing *Terry* at 21-22.

{¶17} "The propriety of an investigative stop by a police officer must be viewed in

light of the totality of the surrounding circumstances." *Terry* at 27. The circumstances surrounding the stop must "be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Bobo*, 37 Ohio St.3d 177, 179, 524 N.E.2d 489 (1988), quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976).

{¶18} We find that, based on the totality of the circumstances, Officer Malson had reasonable suspicion to conduct an investigatory stop of appellant. Here, the evidence presented at the suppression hearing established that the officers observed appellant commit a turn signal violation, in violation of R.C. 4511.39(A). Generally, a traffic offense meets the requirements under *Terry* constituting reasonable grounds for an investigative stop. *State v. Davenport*, 8th Dist. Cuyahoga No. 83487, 2004-Ohio-5020, ¶ 16, citing *State v. Carlson*, 102 Ohio App.3d 585, 596, 657 N.E.2d 591 (9th Dist.1995). Further, the Ohio Supreme Court has recognized that

> where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question.

*City of Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 1996-Ohio-431, 665 N.E.2d 1091. Accordingly, regardless of the officers' motivation, the initial stop was lawful, based on the undisputed traffic violation.

{¶19} Next, we address appellant's broad contention that his vehicle was illegally searched. On review of the record, we find that appellant's argument is negated by the

testimony of Officer Malson, which establishes that appellant gave the officers permission to search his vehicle. One well-established exception to the warrant requirement is the consent search. Thus, no Fourth Amendment violation occurs when an individual voluntarily consents to a search. *See United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002) (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); *State v. Comen*, 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990).

**{¶20}** As stated by this court in *State v. Wilburn*, " 'A police officer's request for consent to search a vehicle stopped for a traffic violation is valid if it is made, and voluntary consent is obtained, during the period of time reasonably necessary to process the traffic citation; in other words, while the driver is lawfully detained for the traffic violation.' " 188 Ohio App.3d 384, 2010-Ohio-3536, 935 N.E.2d 509, ¶ 12 (2d Dist.), quoting *State v. Watts*, 2d Dist. Montgomery No. 21982, 2007-Ohio-2411, ¶ 12.

**{¶21}** In the case sub judice, appellant does not challenge the validity of his consent to search or the duration of his detention. Accordingly, we find that the search of appellant's vehicle was valid.

**{¶22}** We next turn to whether Officer Benge's pat down of appellant was proper. "Once a lawful stop has been made, the police may conduct a limited protective search for concealed weapons if the officers reasonably believe that the suspect may be armed or a danger to the officers or to others.*" State v. Rodriguez*, 12th Dist. Preble No. CA2009-09-024, 2010-Ohio-1944, ¶ 28, quoting *State v. Lawson*, 180 Ohio App.3d 516,

2009-Ohio-62, 906 N.E.2d 443, ¶ 21 (2d Dist.). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *State v. Evans*, 67 Ohio St.3d 405, 422, 1993-Ohio-186, 618 N.E.2d 162, citing *Terry*, 392 U.S. at 24. To justify a pat down, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* at 27. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id*. *See also State v. Smith*, 56 Ohio St.2d 405, 407, 384 N.E.2d 280 (1978). In determining whether a police officer reasonably believed the suspect was armed sufficient to justify a pat down, we look to the totality of the circumstances. *Evans* at 408.

{¶23} Additionally, it is well recognized that the need for a protective pat down becomes more urgent where drugs are involved. "The very nexus between drugs and guns can create a reasonable suspicion of danger to the officer." *State v. Thompson*, 1st Dist. Hamilton No. C-050400, 2006-Ohio-4285, ¶11. Further, "[r]ecognizing the prevalence of weapons in places where illegal drugs are sold and used * * * an officer's fear of violence when investigating drug activity is a legitimate concern that will justify a pat-down search for weapons." *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 23, citing *State v. Taylor*, 82 Ohio App.3d 434, 612 N.E.2d 728 (2d Dist.1992).

{¶24} We find that, based on the totality of the circumstances, Officer Benge articulated a reasonable basis to believe that appellant may be armed and dangerous. The area in which the officers stopped appellant was known for its high rate of crime and specifically

its high rate of drug crimes. Officer Benge testified that, based on her knowledge and experience as an officer, "weapons are synonymous with drugs. They go hand and hand." Moreover, Officer Benge testified that she was concerned appellant may have obtained a weapon from the female passenger while they were in the back of the cruiser unhandcuffed. These factors, taken together and viewed objectively through the eyes of the officer on the scene, warrant a reasonable belief that appellant could be armed. Thus, the totality of the circumstances supports the trial court's finding that Officer Benge's pat down of appellant was proper.

{¶25} Finally, we address whether Officer Benge properly seized the drugs in appellant's sock. Although *Terry* limits the scope of the search to weapons, the discovery of other contraband during a *Terry* search will not necessarily preclude its admissibility. *State v. Hansard*, 4th Dist. Scioto No. 07CA3177, 2008-Ohio-3349, ¶ 30. The "plain feel" and "plain view" doctrines allow a police officer to seize contraband even if the officer does not have a search warrant for that item, so long as its nature as contraband is immediately apparent. *State v. Cobb*, 12th Dist. Butler No. CA2007-06-153, 2008-Ohio-5210, ¶ 30, citing *State v. Halczyszak*, 25 Ohio St.3d 301, 303, 496 N.E.2d 925 (1986). An object's incriminating nature is immediately apparent when a police officer has probable cause to believe the item is associated with criminal activity. *Halczyszak* at 304, citing *Texas v. Brown*, 460 U.S. 730, 741-742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). "Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against successfully speculative seizures." *State v. Groves*, 156 Ohio App.3d 205,

2004-Ohio-662, 805 N.E.2d 146, ¶ 42 (2d Dist.), citing *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

{¶26} "Probable cause to associate an object with criminal activity does not demand certainty in the minds of police, but instead merely requires that there be a 'fair probability' that the object they see [or feel] is illegal contraband or evidence of a crime." *State v. Jones*, 2d Dist. Montgomery No. 19248, 2002-Ohio-4681, ¶ 10, citing *State v. Thompson*, 134 Ohio App.3d 1, 4, 729 N.E.2d 1268 (2d Dist.1999).

{¶27} After a thorough review of the record, we find that Officer Benge had probable cause to seize the contraband located in appellant's sock. As discussed above, Officer Benge was in a position to view the drugs lawfully because she had reasonable suspicion to pat down appellant. Moreover, the discovery of the drugs was inadvertent as Officer Benge was conducting the pat down to look for weapons. Lastly, the incriminating nature of the bulge in appellant's sock was immediately apparent based on the totality of the surrounding circumstances.

{¶28} At the suppression hearing, Officer Benge explained that during the pat down, she observed a large bulge in appellant's sock. She testified that, based on her knowledge and experience as a police officer, she believed that the bulge was "more than likely going to be the same contraband that his passenger had." The totality of the facts and circumstances under which the property was discovered supports Officer Benge's conclusion. Appellant's passenger was first observed moving inside the vehicle in a manner consistent with an attempt to conceal something. Subsequently, while appellant and the passenger were alone and unhandcuffed in the back of the cruiser, the passenger was caught manipulating a hypodermic

needle in the front of her pants. Moreover, during the search of appellant's vehicle, the officers discovered cut-up pieces of cigarette filters, which, in their experience, is used by heroin users to filter heroin into hypodermic needles. All these factors considered collectively led Officer Benge to reasonably believe that it was immediately apparent that the bulge discovered in appellant's sock was illegal contraband. *See State v. Jimenez,* 12th Dist. Warren No. CA2011-09-103, 2012-Ohio-3318; *State v. Jordan*, 8th Dist. Cuyahoga No. 80851, 2002-Ohio-5086, ¶ 24 (where it was immediately apparent that the L-shaped bulge under the floor mat of appellant's car was a gun).

{¶29} Based on the foregoing, we find that Officer Benge had probable cause to associate the bulge in appellant's sock with criminal activity. Vested with probable cause to believe that appellant was in possession of illegal contraband, Officer Benge was entitled to seize the contraband from appellant's sock. Accordingly, the trial court did not err in overruling appellant's motion to suppress. Appellant's sole assignment of error is overruled.

{¶30} Judgment affirmed.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

(Hon. Frank D. Celebrezze, Jr., Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Mathias H. Heck
Andrew T. French
Adrian King
Hon. Dennis J. Adkins