SADLER, J., dissenting.
 

 {¶ 48} Because I believe the trial court erred in granting defendant's motion to suppress, I would sustain the state's assignment of error and reverse the judgment of the trial court. Because the majority does not, I respectfully dissent.
 

 {¶ 49} In my view, the warrantless seizure of the narcotics in Carlson's possession is justified under the plain view exception to the warrant requirement first expressly recognized by the United States Supreme Court in
 
 Coolidge v. New Hampshire
 
 ,
 
 403 U.S. 443
 
 ,
 
 91 S.Ct. 2022
 
 ,
 
 29 L.Ed.2d 564
 
 (1971). The plain view doctrine allows police officers, under particular circumstances, to seize an "article of incriminating character" without a warrant.
 
 State v. Halczyszak
 
 ,
 
 25 Ohio St.3d 301
 
 , 303,
 
 496 N.E.2d 925
 
 (1986). "The doctrine 'is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost.' "
 

 Id.
 

 , quoting
 
 Illinois v. Andreas
 
 ,
 
 463 U.S. 765
 
 , 771,
 
 103 S.Ct. 3319
 
 ,
 
 77 L.Ed.2d 1003
 
 (1983).
 
 [4]
 

 {¶ 50} The warrantless seizure by a law enforcement officer of an object in plain view does not violate the Fourth Amendment of the United States Constitution if (1) the officer did not violate the Fourth Amendment in arriving at the place from which the object could be plainly viewed, and (2) its incriminating nature was immediately apparent.
 
 State v. Williams
 
 ,
 
 55 Ohio St.2d 82
 
 ,
 
 377 N.E.2d 1013
 
 (1978), paragraph one of the syllabus.
 
 [5]
 

 {¶ 51} With respect to the first prong of the
 
 Coolidge
 
 test, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."
 
 Terry v. Ohio,
 

 392 U.S. 1
 
 , 19,
 
 88 S.Ct. 1868
 
 ,
 
 20 L.Ed.2d 889
 
 (1968), fn. 16. "The Fourth Amendment is not implicated when a police officer approaches a person in a public place, requests to speak to him, receives permission to do so and then asks questions because the person is free to walk away."
 
 State v. Pierce
 
 ,
 
 125 Ohio App.3d 592
 
 , 598,
 
 709 N.E.2d 203
 
 (10th Dist. 1998), citing
 
 Florida v. Royer
 
 ,
 
 460 U.S. 491
 
 , 497-98,
 
 103 S.Ct. 1319
 
 ,
 
 75 L.Ed.2d 229
 
 (1983). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual * * *; ask to examine the individual's identification * * *; and request consent to search his or her luggage."
 
 Florida v. Bostick
 
 ,
 
 501 U.S. 429
 
 , 434-35,
 
 111 S.Ct. 2382
 
 ,
 
 115 L.Ed.2d 389
 
 (1991). The person approached, however, need not answer any question put to him and may continue on his way.
 
 Royer
 
 at 497-98,
 
 103 S.Ct. 1319
 
 .
 

 {¶ 52} The facts developed at the suppression hearing with regard to Officer Wise's approach to Carlson and defendant establish that Officer Wise simply approached two individuals standing in a dark alley from a distance of ten to fifteen feet away while shining his flashlight at the object in Carlson's hand. There is no evidence that Officer Wise ordered the two suspects to remain where they were or told them they were not free to go, no evidence that he drew a weapon, no evidence that he physically restrained either Carlson or defendant, no evidence that he blocked their path, and no evidence of any other demonstration of authority by Officer Wise that would have caused a reasonable person in defendant's position to believe he was not free to go. In my view, these facts establish that Officer Wise was lawfully in a position where he could get a better look at the object in Carlson's hand under illumination. Certainly, the appearance of Officer Wise in a public alley would be less intrusive than an officer who "approaches and questions persons seated within parked vehicles." (Majority at ¶ 17, quoting
 
 State v. Jones
 
 ,
 
 188 Ohio App.3d 628
 
 ,
 
 2010-Ohio-2854
 
 ,
 
 936 N.E.2d 529
 
 , ¶ 20 (10th Dist.), citing
 
 State v. McClendon
 
 , 10th Dist. No. 09AP-554,
 
 2009-Ohio-6421
 
 ,
 
 2009 WL 4649968
 
 , ¶ 8.)
 

 {¶ 53} Neither the record nor case law supports the trial court's conclusion that Officer Wise detained Carlson and defendant at any point in time prior to grabbing the baggie from Carlson's hand. Even if Officer Wise's intent was to conduct an
 investigation of suspected drug activity, the Fourth Amendment did not require a reasonable suspicion that Carlson and defendant were engaged in criminal activity before Officer Wise could approach them with a flashlight in a public alley way in order to get a better view of the object in Carlson's hand.
 
 See
 

 United States v. Dunn
 
 ,
 
 480 U.S. 294
 
 , 305,
 
 107 S.Ct. 1134
 
 ,
 
 94 L.Ed.2d 326
 
 (1987) (officer's use of the beam of a flashlight, directed through the essentially open front of the barn, does not transform their observations into an unreasonable search within the meaning of the Fourth Amendment);
 
 United States v. Wright
 
 ,
 
 449 F.2d 1355
 
 (D.C. Cir. 1971) (officer's conduct in shining a flashlight through a gap between the defendant's closed garage doors was not a search for purposes of the Fourth Amendment);
 
 State v. Pitts
 
 , 2d Dist. No. 18964,
 
 2001 WL 1473789
 
 (Nov. 21, 2001) (officer leaning into a lawfully stopped vehicle with his flashlight to attempt to view the area between the seat and the console was not a search);
 
 State v. Lungs
 
 , 2d Dist. No. 22704,
 
 2008-Ohio-4928
 
 ,
 
 2008 WL 4369760
 
 , ¶ 24 ("the fact that [the officer] leaned into the van and utilized a flashlight in observing the evidence [did] not elevate his conduct to a search, and it [did] not negate the fact that the items were otherwise openly visible"). In my view, the first prong of the
 
 Coolidge
 
 test is satisfied because the evidence shows that Officer Wise was lawfully in a position to observe, with the aid of a flashlight, the object in Carlson's hand before reaching out and grabbing it.
 

 {¶ 54} "The 'immediately apparent' requirement of the 'plain view' doctrine is satisfied when police have probable cause to associate an object with criminal activity."
 
 Halczyszak
 
 at paragraph three of the syllabus.
 
 [6]
 
 "In ascertaining the required probable cause to satisfy the 'immediately apparent' requirement, police officers may rely on their specialized knowledge, training and experience."
 

 Id.
 

 at paragraph four of the syllabus. In the context of the plain view doctrine, "[p]robable cause is a flexible, common-sense standard, merely requiring that the facts available to the officer would warrant a man of reasonable caution to believe that certain items may be contraband."
 
 Texas v. Brown
 
 ,
 
 460 U.S. 730
 
 , 731,
 
 103 S.Ct. 1535
 
 ,
 
 75 L.Ed.2d 502
 
 (1983). "Probable cause to associate an object with criminal activity does not demand certainty in the minds of police, but instead merely requires that there be 'a fair probability' that the object they see is illegal contraband or evidence of a crime."
 
 State v. Thompson
 
 ,
 
 134 Ohio App.3d 1
 
 , 4,
 
 729 N.E.2d 1268
 
 (2d Dist. 1999), quoting
 
 State v. George
 
 ,
 
 45 Ohio St.3d 325
 
 ,
 
 544 N.E.2d 640
 
 (1989), paragraph one of the syllabus. "[A]n officer may rely on specialized knowledge and training 'to draw inferences and make deductions that might well elude an untrained person.' "
 
 Halczyszak
 
 at 307,
 
 496 N.E.2d 925
 
 , quoting
 
 Brown
 
 at 746,
 
 103 S.Ct. 1535
 
 . Accordingly, it is of no consequence that Officer Wise was not absolutely certain that the object contained heroin until he held it in his hand and his partner subsequently field tested the substance. Rather, under
 
 Coolidge
 
 it is sufficient for purposes of the "immediately apparent" prong of the plain view doctrine that Officer Wise had probable cause to associate the object with criminal activity.
 

 {¶ 55} In
 
 State v. Wade
 
 , 12th Dist. No. CA93-12-043,
 
 1994 WL 185676
 
 (May 16, 1994), a state trooper stopped the defendant's car for speeding.
 
 [7]
 
 When the defendant voluntarily opened the trunk of the car to retrieve his operator's license from a gym bag, the trooper noticed several small plastic bags in the trunk and rolled up baggies in the defendant's gym bag. Though the trooper could not see what was in the plastic baggies, he reached into the gym bag and removed a baggie. The trooper recognized the material in the baggie as marijuana and placed the defendant under arrest. The defendant was subsequently indicted for drug trafficking and possession of drug paraphernalia, but the trial court suppressed the evidence as the fruit of an illegal search. The Twelfth District held that the trial court's decision was contrary to the evidence.
 

 Id.
 

 The court of appeals explained its reasoning as follows:
 

 Trooper Brown immediately recognized that the baggies signaled the presence of illicit drug activity. The fact that he could not readily see the substance contained in the baggies is of no consequence. The distinctive character of the baggies and the manner in which they were kept, particularly to the experienced eye of Trooper Brown, made it immediately apparent that they contained contraband. See
 
 Texas v. Brown
 
 (1983),
 
 460 U.S. 730
 
 ,
 
 103 S.Ct. 1535
 
 ,
 
 75 L.Ed. 2d 502
 
 . Based on the foregoing analysis, we find that the [immediately apparent] prong of the
 
 Coolidge
 
 test has been satisfied. Trooper Brown lawfully viewed the baggies in appellee's trunk and was justified under the plain view doctrine in seizing them.
 

 Id.
 

 {¶ 56} Here, Officer Wise estimated that during his career as a patrol officer for the Columbus Division of Police, he had made "a few dozen" narcotics arrests. (Tr. at 17.) Officer Wise suspected that defendant "went inside the house and purchased narcotics," based on the relatively short time of one to two minutes defendant had been in the house before returning to the alley to hand off the object to Carlson. (Tr. at 12.) Officer Wise acknowledged that when defendant handed the small object to Carlson, he was unable to see it well enough in the darkness to identify it as narcotics, but he suspected at that point in time he had observed a drug transaction. He testified that "[w]hen I approached them and I could clearly see * * * Carlson was holding a plastic bag in his hand that was suspected narcotics." (Tr. at 27.) Officer Wise shone his flashlight on the object in Carlson's hand and he could see "a small object, maybe the size of my pinkie there wrapped up in plastic wrap." (Tr. at 13.) Under these circumstances, as in
 
 Wade
 
 , the "immediately apparent" prong of the plain view doctrine has been satisfied.
 

 {¶ 57} Accordingly, I believe the evidence presented at the suppression hearing establishes that both prongs of
 
 Coolidge
 
 have been met. Officer Wise saw defendant go into a residence for one to two minutes and return to the alley where he immediately passed a small object to Carlson. Based on his experience as an officer who had made multiple previous drug arrests, Officer Wise suspected he had witnessed a hand-to-hand drug transaction and decided to further investigate by approaching the two individuals in a public place, lawfully utilizing his flashlight to illuminate the object defendant handed to Carlson. When Officer Wise saw in plain view a pinkie sized object wrapped in plastic wrap, he suspected it to be heroin. Officer Wise grabbed
 the baggie from Carlson's hand and observed that the pinkie sized object was brown in color, indicating heroin.
 
 [8]
 
 On these facts, the record establishes that Officer Wise was lawfully in a position where he could plainly view the object handed off from defendant to Carlson and, after lawfully illuminating the object, Officer Wise was able to observe a substance under circumstances which would warrant a man of reasonable caution to believe that the substance was illegal narcotics.
 
 [9]
 

 {¶ 58} "When * * * officers observe[ ] what could be interpreted as a drug-buy, they [have] a duty to investigate."
 
 State v. Hartman
 
 , 2d Dist. No. 13332,
 
 1992 WL 297629
 
 (Oct. 22, 1992). Because I believe that Officer Wise observed what he reasonably believed to be illegal drugs in plain view after approaching Carlson and defendant in a public place, I conclude that no violation of defendant's constitutional rights occurred when the baggie was taken from Carlson and that the trial court erred when it granted defendant's motion to suppress.
 

 {¶ 59} For the foregoing reasons, I would reverse the judgment of the trial court and remand this matter for further proceedings. Because the majority does not, I respectfully dissent.
 

 The majority suggests that the state waived the plain view doctrine for purposes of appeal by failing to raise it at the suppression hearing. Under similar facts, this court, in
 
 State v. Muldrow,
 

 2016-Ohio-4774
 
 ,
 
 68 N.E.3d 260
 
 , rejected defendant's claim that the state waived an argument based on the "collective knowledge doctrine" even though the state did not specifically mention the doctrine in briefing or in its closing argument at the suppression hearing.
 
 Id.
 
 at ¶ 20. In
 
 Muldrow
 
 , we held that the state had not waived the collective knowledge doctrine for purposes of appeal because "the state argued the crux of its collective knowledge theory to the trial court, albeit without extensive briefing or citation to relevant authority."
 
 Id.
 
 We further explained that "[e]ven though the state did not fully develop this argument in the trial court, the state did raise the issue before the trial court, and, thus, we will consider the merits of the state's collective knowledge doctrine argument."
 
 Id.
 

 Here, though the prosecutor did not expressly state that the drugs were in "plain view" when Officer Wise seized the baggie from Carlson's hand, the crux of the state's argument was that Officer Wise lawfully approached Carlson and defendant, that he was able to better observe the baggie from that vantage point, and that, based on his prior observation of a hand-to-hand exchange, he reasonably believed that the small object wrapped in plastic was illegal narcotics. Thus, in my view, the prosecutor argued the plain view theory in the trial court even though he did not use the term "plain view" either in briefing or in closing argument.
 

 "The plain view doctrine previously had a * * * requirement that the officer must discover the incriminating evidence inadvertently, but this requirement was eliminated."
 
 State v. Pitts
 
 , 2d Dist. No. 18964,
 
 2001 WL 1473789
 
 (Nov. 21, 2001), citing
 
 State v. Waddy
 
 ,
 
 63 Ohio St.3d 424
 
 , 442,
 
 588 N.E.2d 819
 
 (1992), fn. 5, citing
 
 Horton v. California
 
 ,
 
 496 U.S. 128
 
 ,
 
 110 S.Ct. 2301
 
 ,
 
 110 L.Ed.2d 112
 
 (1990).
 

 Implied in
 
 Coolidge
 
 and the case law applying the plain view doctrine is the recognition that "probable cause" for purposes of the plain view doctrine is distinguishable from probable cause to search or probable cause to arrest.
 
 Texas v. Brown
 
 ,
 
 460 U.S. 730
 
 ,
 
 103 S.Ct. 1535
 
 ,
 
 75 L.Ed.2d 502
 
 (1983) ;
 
 State v. George
 
 ,
 
 45 Ohio St.3d 325
 
 ,
 
 544 N.E.2d 640
 
 (1989) ;
 
 Halczyszak.
 

 Motion for delayed appeal denied in
 
 State v. Wise
 
 ,
 
 70 Ohio St.3d 1437
 
 ,
 
 638 N.E.2d 1040
 
 (1994).
 

 Even if defendant was detained the moment Officer Wise grabbed the baggie from Carlson, because Officer Wise was lawfully in a position where he could see the baggie in Carlson's hand and because the criminality of the contents of the baggie was apparent to him, Carlson had no privacy right to the object and Officer Wise could lawfully seize it under the plain view doctrine.
 

 Though the majority distinguishes the plain view case law cited by the state because there was additional evidence presented in those cases that the arresting officer was surveilling an area known for drug activity, there is no case law holding that such circumstances are required for the application of the plain view doctrine. Nor is there any case law suggesting that the arresting officer must see an exchange of money, as was the case in
 
 State v. Barr
 
 ,
 
 86 Ohio App.3d 227
 
 ,
 
 620 N.E.2d 242
 
 (8th Dist. 1993), in order to associate an object with an illegal drug transaction.