OPINION
{¶ 1} This appeal is brought by the State pursuant to R.C. 2945.67 and Crim.R. 12(K), from the trial court's judgment granting Defendant's motion to suppress evidence.
 {¶ 2} On September 20, 2006, at 5:43 p.m., Dayton Police
Officers Michael Fuller and Daniel Reynolds stopped a Buick Park *Page 2 
Avenue with dark tinted windows near the intersection of Glenbrook and Carnegie in Dayton. The windows were so dark that Officer Fuller could not see inside the vehicle, and Officer Fuller knew from his experience that the condition constituted a window tint violation.
 {¶ 3} Defendant, Ashanta Watts, was the driver and sole occupant of the vehicle. When Officer Fuller asked Defendant for his driver's license, Defendant's hands shook so badly that he had difficulty removing his license from his wallet. Fuller testified that Defendant was very nervous, more so than most people who are stopped for traffic violations.
 {¶ 4} Officer Fuller ran Defendant's license, which turned out to be valid. That took less than one minute. Officer Fuller then returned to Defendant's vehicle and asked Defendant for permission to search his vehicle. The request was based on Defendant's extraordinary nervousness. Defendant told Officer Fuller that the vehicle did not belong to him but that Officer Fuller could search it. Defendant did not hesitate in consenting to the search. Neither did he limit the search of the vehicle officers might perform. At Officer Fuller's request Defendant agreed to a pat-down frisk, which revealed nothing, and further agreed to sit in the rear of Fuller's police cruiser during the search of his vehicle. *Page 3 
 {¶ 5} While Officer Fuller was searching Defendant's vehicle, Officer Reynolds tested the window tint level with a meter, which revealed that the tinting allowed only twenty-nine percent of the light to pass through, instead of the minimum fifty percent required by law. Officer Reynolds then began filling out the paperwork for the window tint citation while Officer Fuller continued to search. That was approximately ten to fifteen minutes into the traffic stop.
 {¶ 6} Officer Fuller first searched the passenger compartment and found nothing. He then moved to the trunk, where he found a water bottle with a concealed middle compartment that contained a baggie of crack cocaine. Officer Fuller immediately recognized the crack cocaine based upon his experience, which included hundreds of encounters with crack cocaine.
 {¶ 7} Officer Fuller arrested Defendant for possession of crack cocaine. An inventory search of the vehicle prior to towing produced a set of digital scales. A subsequent search of Defendant's person disclosed more cocaine. After Defendant's vehicle was towed away and while transporting Defendant to jail, Officer Fuller detoured to the tow yard where Officer Reynolds checked the window tint with a meter a second time because he had forgotten the exact reading he initially obtained at the scene of the stop. *Page 4 
 {¶ 8} Defendant was indicted on one count of possession of crack cocaine, over ten but less than twenty-five grams, in violation of R.C.2925.11(A), one count of possession of cocaine, not crack, in an amount greater than twenty-five grams but less than one hundred grams, R.C.2925.11(A), one count of possessing criminal tools, R.C. 2923.24(A), and one count of trafficking in cocaine, not crack, in an amount between five and ten grams, R.C. 2925.03(A)(2). Defendant filed a Crim.R. 12(C)(3) motion to suppress the evidence seized in the search of his vehicle and his person.
 {¶ 9} Following a hearing, the trial court granted Defendant's motion. The trial court accepted as true Officer Fuller's testimony and found it more credible than Defendant's. The court also found that the initial stop of Defendant's vehicle for the window tint violation was valid. However, relying upon State v. Robinette, 80 Ohio St.3d. 234, 1997-Ohio-343, the trial court held that because Officer Fuller's request to search Defendant's vehicle was not supported by a reasonable suspicion of any criminal activity other than the window tint violation, the continued detention was unlawful and violated Defendant's Fourth Amendment rights.
 {¶ 10} The State timely appealed to this court from the trial court's decision suppressing the evidence. *Page 5 
ASSIGNMENT OF ERROR {¶ 11} "THE TRIAL COURT ERRED IN SUSTAINING WATTS' MOTION TO SUPPRESS. A POLICE OFFICER MAY ASK A PERSON IN CUSTODY FOR CONSENT TO SEARCH HIS CAR EVEN THOUGH THE OFFICER LACKS PROBABLE CAUSE OR EVEN AN OBJECTIVELY REASONABLE BASIS TO ASSOCIATE THE PERSON WITH A CRIME. THE QUESTION IS WHETHER THE PERSON WHO IS IN CUSTODY AND WHO CONSENTS DID SO VOLUNTARILY, WHICH MUST BE DETERMINED BY CONSIDERING THE TOTALITY OF THE CIRCUMSTANCES."
 {¶ 12} A police officer's request for consent to search a vehicle stopped for a traffic violation is valid if it is made, and voluntary consent is obtained, during the period of time reasonably necessary to process the traffic citation; in other words, while the driver is lawfully detained for the traffic violation. State v. Loffer, Montgomery App. No. 19594, 2003-Ohio-4980; State v. Swope (Nov. 9. 1994), Miami App. No. 93CA46. On the other hand, once a traffic citation is issued and the purpose of the original stop is completed, the lawful basis for the detention ceases. If police thereafter seek consent to search the vehicle absent some reasonable, articulable suspicion of criminal activity other than the traffic violation, the continued detention is unlawful. State v. Retherford (1994), 93 Ohio App.3d 586; State v.Robinette, 80 Ohio St.3d 234, 1997-Ohio-343. Any consent to search obtained during an unlawful detention is tainted and may be invalid.Retherford. For such *Page 6 
consent to be voluntary, the totality of the circumstances must demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could, in fact, leave. Rabinette.
 {¶ 13} It is undisputed that the stop of Defendant's vehicle for window tint violation was lawful. Dayton v. Erickson, 76 Ohio St.3d 3,1996-Ohio-431. After obtaining Defendant's driver's license and running Defendant's name and identity shown on the license for any outstanding information, which took less than one minute, Officer Fuller promptly asked Defendant for permission to search his vehicle. Defendant consented.
 {¶ 14} Officer Fuller searched Defendant's vehicle while his partner, Officer Reynolds, used a meter to measure the tint on Defendant's windows and filled out the paperwork for a window tint violation. Because Defendant's consent to search his vehicle was obtained within the period of time required to process the window tint violation, and the search likewise took place while the violation was being processed, no reasonable suspicion of criminal activity other than the traffic infraction was required to support the search. Loffer.
 {¶ 15} Furthermore, the totality of the facts and circumstances supports a finding that Defendant's consent to search his vehicle was given freely and voluntarily. Ohio v. *Page 7 Robinette (1996), 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347.;Schneckloth v. Bustamonte (1973), 412 U.S. 218, 43 S.Ct. 2041,36 L.Ed.2d 854.
 {¶ 16} Defendant was seated in his own vehicle, on a public street, in broad daylight. Officer Fuller did not threaten or coerce Defendant in any manner, and Defendant was completely cooperative with Officer Fuller, agreeing to a pat down frisk and to sit in Officer Fuller's cruiser with Officer Reynolds while Fuller searched Defendant's vehicle. Defendant gave his consent immediately, without hesitation or reluctance, and he did not in any way limit the search.
 {¶ 17} The mere fact that Defendant was detained by police pending issuance of a traffic citation, standing alone, does not render Defendant incapable of voluntarily giving consent for the search.State v. Riggins, Hamilton App. No. C-030626, 2004-Ohio-4247. There is no evidence that Defendant subjectively knew that he could decline to give his consent. However, the test for voluntariness is not subjective but objective, based on the totality of the facts and circumstances. Furthermore, while knowledge of the right to refuse consent is one factor to be considered, it is not the sine qua non of a voluntary consent. Ohio v. Robinette, supra.
 {¶ 18} Because Defendant's consent to search his vehicle was *Page 8 
obtained during his lawful detention for a traffic violation, and Defendant had voluntarily consented to that search, his Fourth Amendment rights were not violated. Therefore, the trial court erred in suppressing the evidence discovered in the course of that search.
 {¶ 19} The State's assignment of error is sustained. The judgment of the trial court granting Defendant's motion to suppress evidence will be reversed and the case will be remanded for further proceedings not inconsistent with this opinion.
 FAIN, J. And DONOVAN, J., concur. *Page 1