The STATE of Ohio, Appellant,

v.

WILBURN, Appellee.

[Cite as *State v. Wilburn*, 188 Ohio App.3d 384, 2010-Ohio-3536.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23957.

Decided July 30, 2010.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Carley J. Ingram, Assistant Prosecuting Attorney, for appellant.

Tina M. McFall, Assistant Public Defender, for appellee.

DONOVAN, Presiding Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals a decision of the Montgomery County Court of Common Pleas, General Division, granting defendant-appellee Shane Lee Wilburn's motion to suppress filed on March 9, 2010. A hearing was held on March 19, 2010, after which the court sustained Wilburn's motion to suppress. On March 22, 2010, the court filed an entry and order in which it journalized the decision granting Wilburn's motion. The state filed a timely notice of appeal with this court on March 25, 2010.

I

{¶ 2} Shortly after midnight on June 6, 2009, Deputy Darren Harvey of the Montgomery County Sheriff's Office initiated a stop of a motorist for speeding and a lane-change violation in the area of North Dixie Drive in Dayton, Ohio. In order to effect the stop, Harvey turned on the overhead lights on his cruiser. The motorist turned off the street and pulled into the parking lot of the Dixie Lounge, where he brought his vehicle to a stop. Harvey parked his cruiser ten to 15 feet behind the vehicle and left his overhead lights activated during the entirety of the stop. Prior to approaching the vehicle, Harvey ran the plates on the vehicle and discovered that the plates were valid and matched the vehicle.

{¶ 3} Harvey exited his cruiser and approached the stopped vehicle on the driver's side. Harvey made contact with the occupants of the vehicle and obtained identification from the driver, as well as from the female passenger sitting in the front seat. During the initial encounter, Harvey asked the driver of the vehicle, later identified as Wilburn, whether he had any criminal history. Harvey testified that Wilburn stated that he had been arrested before. Harvey asked Wilburn whether he had any drug history, and Wilburn answered that he had been arrested "for a lot of things."

{¶ 4} Deputy Engle arrived at the scene shortly after the stop was initiated, but did not speak with Wilburn or the passenger. Engle parked his cruiser behind Harvey's cruiser and stood towards the rear of Wilburn's vehicle on the passenger side during the stop. Harvey testified that he returned to his cruiser and ran the licenses of Wilburn and his passenger. Both licenses were valid, and neither individual had any outstanding arrest warrants.

{¶ 5} Harvey returned the licenses to Wilburn and his passenger and informed them that he was only going to issue a warning. Harvey testified that he did not specify whether the warning was going to be written or merely verbal. Immediately after stating his intention to issue a warning, Harvey asked Wilburn for his consent to search the vehicle, and Wilburn stated, "Sure, go ahead." Wilburn exited the vehicle and allowed Harvey to conduct a pat-down for weapons. After ordering the passenger out of the vehicle and frisking her as well, Harvey conducted a search of the vehicle, during which he discovered cocaine. Harvey subsequently arrested Wilburn for drug possession.

{¶ 6} On August 17, 2009, Wilburn was indicted for possession of cocaine (less than five grams) in violation of R.C. 2925.11(A), a felony of the fifth degree. At his arraignment on February 23, 2010, Wilburn stood mute, and the trial court entered a plea of not guilty on his behalf.

{¶ 7} As stated previously, Wilburn filed a motion to suppress in which he argued that under the totality of the circumstances, his consent to search the

vehicle was not freely given. We note that at the hearing, the state and the defense stipulated that the only issue was the voluntariness of Wilburn's consent regarding the search of his vehicle by Harvey. After the hearing held on March 19, 2010, the trial court agreed with Wilburn and granted his motion to suppress.

{¶ 8} It is from this judgment that the state now appeals.

II

{¶ 9} The state of Ohio's sole assignment of error is as follows:

{¶ 10} "The trial court erred by failing to consider the totality of the circumstances in determining whether the state had demonstrated that Wilburn voluntarily consented to the search of his vehicle."

{¶ 11} In regard to a motion to suppress, " 'the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, quoting *State v. Venham* (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac*, Montgomery App. No. 20662, 2005-Ohio-3733, 2005 WL 1707019, citing *State v. Retherford* (1994), 93 Ohio App.3d 586, 639 N.E.2d 498. Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.

{¶ 12} "A police officer's request for consent to search a vehicle stopped for a traffic violation is valid if it is made, and voluntary consent is obtained, during the period of time reasonably necessary to process the traffic citation; in other words, while the driver is lawfully detained for the traffic violation. *State v. Loffer*, Montgomery App. No. 19594, 2003-Ohio-4980[, 2003 WL 22149647]; *State v. Swope* (Nov. 9, 1994), Miami App. No. 93CA46[, 1994 WL 619748]. On the other hand, once a traffic citation is issued and the purpose of the original stop is completed, the lawful basis for the detention ceases. If police thereafter seek consent to search the vehicle absent some reasonable, articulable suspicion of criminal activity other than the traffic violation, the continued detention is unlawful. *State v. Retherford* (1994), 93 Ohio App.3d 586[, 639 N.E.2d 498]; *State v. Robinette* [1997], 80 Ohio St.3d 234[, 685 N.E.2d 762] * * *. Any consent to search obtained during an unlawful detention is tainted and may be invalid. *Retherford.* For such consent to be voluntary, the totality of the circumstances must demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could, in fact, leave. *Robi-*

*nette.*"  *State v. Watts,* Montgomery App. No. 21982, 2007-Ohio-2411, 2007 WL 1454045, ¶ 12.

{¶ 13} The state argues that the trial court failed to consider the totality of the circumstances surrounding the stop of Wilburn's vehicle before finding that the state failed to meet its burden of establishing that Wilburn's consent to search his vehicle was voluntary.  After a thorough review of the record, we find that the court properly considered the totality of the circumstances before it granted Wilburn's motion to suppress.

{¶ 14} It is undisputed that the stop of Wilburn's vehicle for speeding and lane-change violation was lawful.  In fact, prior to the beginning of the hearing on the motion to suppress, the parties agreed that the only issue to be determined was whether Wilburn's consent to search his vehicle was given voluntarily.  We also note that Harvey testified that both Wilburn and his passenger had valid driver's licenses, and neither had any outstanding arrest warrants.  Additionally, Wilburn's vehicle had valid license plates.  The state conceded that Harvey had no reasonable, articulable suspicion that Wilburn was engaged in criminal activity, which would have allowed for a lawful extension of the stop to search Wilburn's vehicle.

{¶ 15} After confirming Wilburn's lawful driving status, Harvey informed Wilburn that he was only going to issue a warning.  Harvey testified that he did not state whether the warning was going to be written or merely verbal in nature.  Instead, Harvey immediately asked Wilburn for his consent to search the vehicle, which Wilburn provided.  Once Harvey informed Wilburn that he was only going to issue a warning, the purpose of the original stop was completed, and the lawful basis for the detention ceased.  Harvey did not tell Wilburn that he was free to leave at that point, nor did he turn off his cruiser's flashing lights during the stop.  We also note that Engle maintained his presence to the right rear of Wilburn's vehicle for the duration of the stop.

{¶ 16} After considering all of these facts, the trial court stated the following:

{¶ 17} "The Court:  * * * I don't know how I distinguish *Robinette,* and it appears to be, and it is still the law of the State of Ohio, so I'm going to have to determine *that under the circumstances of this case, given the facts as testified to by the deputy,* that the State has not established, has not sustained this burden of proof to establish that the consent was a voluntary act as opposed to a mere submission to authority."

{¶ 18} Significantly, the trial court in its oral pronouncement referred to language from *Robinette,* 80 Ohio St.3d 234, 685 N.E.2d 762, which supports its decision.  The trial court noted the officers' superior position of authority, and

although Harvey's question was not expressly coercive, the circumstances surrounding the search rendered the questioning impliedly coercive.

{¶ 19} Clearly, the trial court properly considered the totality of the circumstances surrounding the stop as testified to by Harvey before it determined that the state had failed to establish that Wilburn's consent was voluntarily and freely given. After analyzing all of the facts in light of the Ohio Supreme Court's holding in *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762, the trial court found that Wilburn's consent amounted to nothing more than a "mere submission to a claim of lawful authority." *Florida v. Royer* (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229. In light of the foregoing, we hold that the trial court did not err when it granted Wilburn's motion to suppress.

{¶ 20} The state of Ohio's sole assignment of error is overruled.

### III

{¶ 21} The state of Ohio's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

GRADY and FROELICH, JJ., concur.