[Cite as *State v. Bartone*, 2013-Ohio-2228.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                          :

     Plaintiff-Appellee                            :               C.A. CASE NO.     25299

v.                                                    :               T.C. NO.     11CRB9011

11TRD13736
BRIAN A. BARTONE                                      :               (Criminal appeal from
                                                                       Municipal Court)

     Defendant-Appellant                           :

                                                      :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____31st_____ day of ___May___ , 2013.

. . . . . . . . . .

SHAUNA HILL, Atty. Reg. No. 0074569, Assistant City Prosecutor, 335 W. Third Street, Room 372, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

RICHARD S. DAVIS, Atty. Reg. No. 0031166, 108 E. Main Street, Tipp City, Ohio 45371
     Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}     After the trial court overruled his motion to suppress evidence, Brian A.

Bartone pled no contest to possession of drug paraphernalia in Dayton M.C. No. 11 CRB 9011 and to speeding in Dayton M.C. No. 11 TRD 13736. The trial court found him guilty of both charges, and sentenced him accordingly. Bartone appeals from his convictions, claiming that the trial court erred in denying his motion to suppress. For the following reasons, the trial court's judgment will be affirmed.

{¶ 2} Bartone raises three assignments of error, all of which relate to the denial of his motion to suppress. They state:

THE TRIAL COURT ERRED IN FINDING THAT THERE WAS SUFFICIENT EVIDENCE TO FIND PROBABLE CAUSE THAT APPELLANT HAD COMMITTED THE MINOR MISDEMEANOR OFFENSE, SPEEDING.

THE TRIAL COURT ERRED TO DEFENDANT-APPELLANT'S PREJUDICE AND [SIC] WHEN IT OVERRULED HIS MOTION TO SUPPRESS BECAUSE DEFENDANT-APPELLANT WAS ILLEGALLY DETAINED WHEN THE OFFICER EXCEEDED THE SCOPE AND PURPOSE OF THE ORIGINAL STOP.

THE TRIAL COURT ERRED TO DEFENDANT-APPELLANT'S PREJUDICE WHEN IT OVERRULED HIS MOTION TO SUPPRESS BECAUSE THE SEARCH OF HIS VEHICLE WAS WITHOUT FREE AND VOLUNTARY CONSENT OR, IN THE ALTERNATIVE, VOID PURSUANT TO AN UNLAWFUL SEIZURE.

{¶ 3} In his assignments of error, Bartone challenges the lawfulness of the initial

traffic stop and the validity of his consent to search his vehicle. He asserts that the State did not establish that the traffic stop was lawful, because there was no documentary evidence to corroborate the officer's testimony that he was certified to operate the laser device and that the device was working properly. Bartone further argues that the stop was prolonged and the officer did not lawfully obtain consent to search his vehicle.

{¶ 4} A hearing on Bartone's motion was held in January 2012. Dayton Police Officer Creigee Coleman, the sole witness at the hearing, testified on behalf of the State. His testimony established the following facts.

{¶ 5} On August 29, 2011, Officer Coleman was assigned to "high visibility traffic detail" on Interstate 75 in the construction zone. The officer was positioned on southbound I-75, on the right side of the highway, south of the Edwin C. Moses Boulevard exit. Traffic was moderate to heavy.

{¶ 6} Officer Coleman was monitoring the speed of passing vehicles with an LTI 2020 laser speed detection device. The device was "target sensitive," meaning that the officer trains the laser beam on the front of the vehicle that the officer wishes to target, and the device provides a read out of the speed of that vehicle. Unlike a radar device, the laser device provides a speed that is specific to the vehicle being targeted. Officer Coleman was certified by the State of Ohio to conduct tests on and to operate that model of laser equipment; he has been re-certified every two years, most recently in May 2010. The officer stated that he did a delta distance test, a calibration verification test, a stationary target test, and a scope alignment test before using the device for traffic stops that day. The laser device was working properly when he began his shift.

{¶ 7} Officer Coleman testified that he visually observed Bartone's vehicle traveling at an excessive speed and then targeted Bartone's vehicle with the laser device. The device indicated that Bartone was traveling 65 mph, which was 20 mph over the speed limit. Coleman initiated a traffic stop by activating his overhead emergency lights.

{¶ 8} Prior to exiting his cruiser and approaching Bartone's vehicle, Coleman ran the vehicle's license plate through the cruiser's onboard computer. The resulting information showed that Bartone was the owner of the vehicle and that other officers had noted "field interview contacts" with him concerning drug activity. Specifically, Coleman testified that the FIC's indicated that Bartone had been in numerous "drug areas buying and using crack pipes and using crack cocaine."

{¶ 9} Officer Coleman approached Bartone, identified himself, and told Bartone the reason for the stop (speeding). Bartone provided his Ohio driver's license and proof of financial responsibility. Officer Coleman asked Bartone if he had anything illegal in the vehicle. Bartone said that he did not. The officer then asked if he could search the vehicle. Bartone agreed to a search "without reservations at all."

{¶ 10} Officer Coleman asked Bartone to step out of the vehicle. The officer conducted a pat down for weapons and asked Bartone to stand in front of the vehicle near the guardrail. Bartone cooperated. While searching the vehicle, Coleman observed a back pack on the front passenger seat. Upon opening the back pack, Coleman saw a Crown Royal Whiskey bag with a suspected crack pipe and brillo pad inside. The officer showed the items to Bartone. Bartone gasped and said that he did not know that the items were there.

{¶ 11} Officer Coleman arrested Bartone for possession of drug paraphernalia and

informed him of his *Miranda* rights; the officer also issued a citation for speeding. Bartone was transported to the Montgomery County Jail. From the time that Bartone was stopped until the point where he was read his *Miranda* rights was approximately 12 to 15 minutes.

**{¶ 12}** Bartone was charged in Case No. 11 TRD 13736 with speeding, in violation of Dayton City Ordnance 71.50, and in Case No. 11 CRB 9011 with possession of drug paraphernalia, in violation of R.C. 2925.14(C). Bartone subsequently moved to suppress the evidence against him, challenging the validity of the traffic stop and the search of his vehicle. After a hearing on the motion, the trial court found "no legal basis on which to grant Defendant's Motion to Suppress."

**{¶ 13}** When ruling on a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). In reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's findings of fact as true, if they are supported by competent, credible evidence. *State v. Burnside*, 110 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The appellate court must then determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Id.*

**{¶ 14}** Bartone first claims that the State did not establish that Officer Coleman lawfully stopped him for speeding. Bartone asserts that there was insufficient evidence that the officer was qualified to operate the laser device or that it was operating properly.

**{¶ 15}** As detailed above, Officer Coleman testified that he was using an LTI 2020

laser detection speed device, which he had been certified to test and use by the State of Ohio upon graduation from the police academy and every two years thereafter; Coleman had ten years of experience. Prior to beginning his traffic enforcement that day, the officer did a delta distance test, a calibration verification test, a stationary target test, and a scope alignment test on the device. The officer testified that the laser device was working properly when he began his shift that day. Officer Coleman's testimony was sufficient to establish that he was qualified to test and use the LTI 2020 laser detection speed device and that the device was in good working order when Bartone was stopped for speeding. *See State v. Brooks*, 2d Dist. Montgomery Nos. 23386, 23387, 2010-Ohio-1119, ¶ 19-27. The State was not required to provide documentary evidence to substantiate the officer's testimony regarding his qualifications and the condition of the device.

{¶ 16} Bartone further contends that Officer Coleman lacked a reasonable and articulable suspicion of criminal activity to detain him for purposes of searching his vehicle, and he argues that he did not validly consent to the search.

{¶ 17} We have previously addressed when a law enforcement officer may validly request to search a vehicle during the course of a traffic stop.

> A police officer's request for consent to search a vehicle stopped for a traffic violation is valid if it is made, and voluntary consent is obtained, during the period of time reasonably necessary to process the traffic citation; in other words, while the driver is lawfully detained for the traffic violation. *State v. Loffer*, Montgomery App. No. 19594, 2003-Ohio-4980; *State v. Swope* (Nov. 9.1994), Miami App. No. 93CA46. On the other hand, once a

traffic citation is issued and the purpose of the original stop is completed, the lawful basis for the detention ceases. If police thereafter seek consent to search the vehicle absent some reasonable, articulable suspicion of criminal activity other than the traffic violation, the continued detention is unlawful. *State v. Retherford* (1994), 93 Ohio App.3d 586; *State v. Robinette*, 80 Ohio St.3d 234, 1997-Ohio-343. Any consent to search obtained during an unlawful detention is tainted and may be invalid. *Retherford*. For such consent to be voluntary, the totality of the circumstances must demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could, in fact, leave. *Robinette*.

*State v. Watts*, 2d Dist. Montgomery No. 21982, 2007-Ohio-2411, ¶ 12; *see also, e.g., State v. Wilburn*, 188 Ohio App.3d 384, 2010-Ohio-3536, 935 N.E.2d 509, ¶ 12 (2d Dist.), quoting *Watts*; *State v. Jalloh*, 2d Dist. Montgomery No. 24972, 2012-Ohio-5314, ¶ 16-17.

{¶ 18} Bartone analogizes these circumstances to those in *Retherford*, in which we held that the officer's continued detention of a motorist after her driver's license had been returned was not a consenual encounter and that her continued detention was unlawful in the absence of a reasonable and articulable suspicion of criminal activity. We emphasized that "the casual conversation, the general questions, or the request for consent cannot be used to impermissibly broaden the investigative scope of the initial detention in the absence of a reasonable [and] articulable suspicion that further criminal activity is afoot." *Retherford* at 601. We further held that, "[w]hen consent is obtained after illegal police activity, such as an illegal detention, search, or arrest, the unlawful police action presumptively taints and

renders involuntary any consent to search. The consent will be held voluntary only if there is proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal action." *Id*. at 602.

{¶ 19} In contrast to *Retherford* (and the Ohio Supreme Court's subsequent opinion in *Robinette*), there was no evidence in this case that Bartone's detention was extended beyond the time reasonably necessary to process a traffic citation for speeding or that Bartone's consent to search his vehicle was not voluntarily given. Officer Coleman testified that he conducted a computer search of Bartone's vehicle's license plate before approaching the vehicle and discovered several FIC's related to past drug activity by Bartone. Upon approaching the car, Bartone provided his driver's license and proof of insurance, which confirmed that Bartone was the driver. Officer Coleman promptly asked him if he had anything illegal in the vehicle and whether the officer could search the vehicle. Bartone agreed to the search without reservations. The record thus reflects that the request to search was made while Bartone was lawfully detained for the traffic violation, and there is no indication that his consent was involuntary.

{¶ 20} Bartone's assignments of error are overruled.

{¶ 21} The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, P.J. and WELBAUM, J., concur.

Copies mailed to:

Shauna Hill
Richard S. Davis
Hon. Daniel G. Gehres