[Cite as *State v. Johnson*, 2017-Ohio-8909.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                              :
                                           :
    *Plaintiff-Appellee*                   :     Appellate Case No. 27574
                                           :
v.                                         :     Trial Court Case No. 2016-CR-3164
                                           :
HAMPTON JOHNSON, III                       :     (Criminal Appeal from
                                           :     Common Pleas Court)
    *Defendant-Appellant*                  :
                                           :

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of December, 2017.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

BEN M. SWIFT, Atty. Reg. No. 0065745, P.O. Box 49637, Dayton, Ohio 45449
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, Hampton Johnson, III, appeals from his convictions for one count of possession of less than five grams of cocaine, a fifth degree felony under R.C. 2925.11(A) and (C)(4)(a); and one count of illegal possession of drug paraphernalia, a fourth degree misdemeanor under R.C. 2925.14(C)(1) and (F)(1). Johnson, who pleaded no contest to the charges, argues in four assignments of error that the trial court erred by overruling in part his motion to suppress evidence obtained as the result of an unlawful traffic stop. We concur with the trial court's finding that the traffic stop in question was constitutionally permissible, and we therefore affirm.

## I. Facts and Procedural History

{¶ 2} At approximately 2:36 a.m. on July 26, 2016, an officer with the Kettering Police Department on routine patrol in a marked cruiser observed Johnson driving away from the Budget Inn at 2700 South Dixie Drive, a location identified by the police as "a known high crime area" associated with prostitution and "frequent[ed] [by] drug users and people that sell drugs." Tr. of Hr'g on Mot. to Suppress 9 and State's Ex. 1, Feb. 3, 2015 [hereinafter *Tr. of Hr'g*]. The officer decided to pursue because Johnson drove off "at a high rate of speed." *Id.* at 9-10.

{¶ 3} To close the distance between his cruiser and Johnson's vehicle, the officer had to accelerate to at least 53 miles per hour, well in excess of the "posted speed limit [of] 35 miles per hour."[1] *Id.* at 9-10. While in pursuit, the officer saw Johnson commit "several lane violations," and when the officer "activated [the cruiser's] overhead light bar,"

---

[1] The footage captured by the officer's cruiser camera reflects a peak speed of 69 miles per hour. Tr. of Hr'g, State's Ex. 1.

Johnson appeared to throw something out of his car through the window on the driver's side.[2]  *Id.* at 10.  Johnson turned left at the next intersection and stopped shortly afterward.  *Id.* at 10-11.

{¶ 4} As the officer approached Johnson's vehicle, Johnson seemed to be "shifting around in his seat" and "reach[ing] * * * towards * * * his lap," a behavior the officer described as typical of a person "either trying to hide something or retrieve something." *Id.* at 11.  The officer spoke briefly with Johnson and returned to his cruiser to run a background check through the Law Enforcement Automated Data System.  *Id.* at 12-13. By that point, the officer's observation of Johnson's lane violations had caused him to suspect that Johnson was "possibly * * * driving * * * while intoxicated," and when the background check revealed that Johnson had been convicted for possession of cocaine and drug paraphernalia, the officer concluded that "Johnson [had been] reaching around in the car" to conceal "some type of contraband in there."  *Id.* at 12-13.  The officer then returned to Johnson's car and requested permission to conduct a search.  *Id.* at 13.

{¶ 5} In response, Johnson "said 'sure' and * * * immediately tried to get out of [his] car," but because Kettering Police Department protocol required that another officer be present to assist, the officer instructed him to wait.  *Id.* at 14.  Once backup arrived, the officer had Johnson exit his car and requested permission to search his person; Johnson again consented.  *Id.* at 15-16.  The officer found nothing on Johnson's person.  *Id.* at 37.

{¶ 6} Turning to Johnson's car, the officer noticed "the odor of * * * burned

---

[2] The officer subsequently searched for whatever it was that Johnson might have thrown out of the window.  He did not find anything.  Tr. of Hr'g 24-25.

marijuana" when he opened the driver's side door, and on the floorboard in front of the driver's seat, he discovered "broken pieces of glass that looked like they had been [a] crack pipe at one point in time." *Id.* at 16-17. He eventually discovered other items associated with the use of crack cocaine.[3] *Id.* at 17. After completing the search, he handcuffed Johnson, whom he secured in the rear of his cruiser, and then questioned Johnson without reciting the obligatory *Miranda* warning. *Id.* at 18. Ultimately, the officer issued Johnson a citation for violating Kettering Codified Ordinances § 432.08, captioned "Driving Within Lanes or Continuous Lines of Traffic," but not for speeding. *Id.* at 20-21.

{¶ 7} On November 4, 2016, a Montgomery County grand jury issued an indictment charging Johnson with one count of possession of less than five grams of cocaine, and one count of illegal possession of drug paraphernalia.[4] Johnson filed his motion to suppress on December 19, 2016, asking the trial court to suppress "all evidence obtained * * * as a result of [his] stop and detention," as well as "all evidence obtained * * * as a result of [his] interrogation." *See* Def.'s Mot. to Suppress 1. In its decision of March 11, 2017, the court overruled Johnson's motion with respect to all evidence other than the statements he made after being handcuffed. Dec. & Entry Overruling in Part and Granting in Part Def.'s Mot. to Suppress 11-12.

{¶ 8} At his plea hearing on March 27, 2017, Johnson pleaded no contest to the

---

[3] The other items included a glass rod coated with drug residue and steel wool scouring pads. According to the officer, the glass rod would have been used to load the pipe with crack cocaine, and the steel wool would have been used as a filter in the pipe. Tr. of Hr'g 17.

[4] The recovery of the cocaine is not directly at issue in this appeal. *See* Tr. of Hr'g 39-40.

two charges.   Following his sentencing hearing, the court filed its termination entry on April 26, 2017, and Johnson timely filed his notice of appeal on May 5, 2017.

## II. Analysis

{¶ 9} Johnson presents four assignments of error, all of which relate to the trial court's ruling on his motion to suppress.   Appellate "review of a motion to suppress presents a mixed question of law and fact."   *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.   As the trier of fact, a trial court "is in the best position to weigh * * * evidence * * * and evaluate [the credibility of] witness[es]," so an "appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence."   *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 9, citing *State v. Cruz*, 12th Dist. Preble No. CA2013-10-008, 2014-Ohio-4280, ¶ 12.   Accepting the trial court's findings of fact as true, "the appellate court must then independently determine, without deference to the [trial court's legal] conclusion[s]," whether the "facts satisfy the applicable * * * standard."   *Burnside*, 2003-Ohio-5372, ¶ 8, citing *Fanning*, 1 Ohio St.3d 19, and *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (3d Dist.1997).

{¶ 10} For the first of his assignments of error, Johnson contends that:

> THE TRIAL COURT ERRED IN UPHOLDING THE STOP OF APPELLANT'S VEHICLE AND FAILED TO SUPPRESS EVIDENCE GAINED AS THE RESULT OF THE UNLAWFUL STOP.

{¶ 11} Johnson argues that the Kettering Police officer had no constitutional basis for stopping his vehicle, and by extension, that all evidence obtained as a result of the

stop should have been suppressed. Appellant's Br. 11-12. He alleges that the officer's stated reason for making the stop—violation of Kettering Codified Ordinances § 432.08— was "pretextual," and he faults the trial court for approving the stop based upon the court's own, after-the-fact justification. *See id.* at 11-14.

**{¶ 12}** The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 8, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see also State v. Taylor*, 138 Ohio App.3d 139, 145, 740 N.E.2d 704 (2d Dist.2000) (noting "the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article 1" of the Ohio Constitution "protect the same interests in a consistent manner"). Warrantless searches and seizures violate this prohibition unless conducted pursuant to one of the "few specifically established and well-delineated exceptions." (Citations omitted.) *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of these exceptions "is commonly known as an investigative or *Terry* stop," which includes the temporary detention of motorists for the enforcement of traffic laws. *State v. Dorsey*, 10th Dist. Franklin No. 04AP-737, 2005-Ohio-2334, ¶ 17, citing *Terry*, 392 U.S. 1.

**{¶ 13}** Though not necessarily requiring a warrant, the temporary "detention of [persons] during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. (Citations omitted.) *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). An "automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. Generally, a police officer's decision to stop an automobile will comport with this

requirement if the officer has a "reasonable suspicion" of criminal activity. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-1105 (9th Cir.2000); *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23.

{¶ 14} By Johnson's account, the Kettering Police officer "testified unequivocally that [the traffic stop was prompted] solely [by] perceived lane-change violations," for which the officer issued a citation. Appellant's Br. 7-8 and 12. Building on this characterization of the officer's testimony, Johnson faults the trial court for determining that the officer was not "credible [on the question of Johnson's failure to] travel[] in marked lanes" but concluding even so that the stop was justified by "a fair probability that [Johnson] was speeding." Dec. & Entry Overruling in Part and Granting in Part Def.'s Mot. to Suppress 2 and 6. Given that the officer issued Johnson a citation for lane violations, rather than speeding, Johnson argues that the trial court impermissibly "substitute[d] its [own rationale] for that of [the officer] in order to supply" retroactive justification for the traffic stop.[5] *See* Appellant's Br. 14. Johnson mischaracterizes the officer's testimony, as well as the court's decision.

{¶ 15} At the hearing on Johnson's motion to suppress, the State had the following exchange with the officer:

THE STATE: Okay. Tell me about what the vehicle did when it left the Budget Inn that caused you to conduct the traffic stop?

THE OFFICER: After it had left the Budget Inn, it continued

---

[5] The citation referred to Kettering Codified Ordinances § 432.08(a), which states that "[a] vehicle shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." *See also* Tr. of Hr'g 42-43.

northbound on Dixie. I noticed it was going at a high rate of speed. I myself[] had to catch up to it[] driving 53 miles an hour.

THE STATE: Was it—was it going faster than the posted speed limit?

THE OFFICER: It was. The posted speed limit was 35 miles per hour there. And as the vehicle continued northbound, it made several lane violations, which ultimately caused me to conduct the traffic stop.

Tr. of Hr'g 9-10. Thus, the officer had more than one reason for stopping Johnson, but his initial motivation was Johnson's speeding. Later, on redirect examination, the officer explained why he did not issue a speeding citation to Johnson:

THE STATE: Okay. You did not cite him for speeding, is that correct?

THE OFFICER: Correct.

* * *

THE STATE: Why did you not cite [him] for speeding?

* * *

THE OFFICER: I did not get [him] with my radar unit, and I was also not able to pace him for a good distance. That's why he was not cited for speed[ing].

*Id.* at 44-45.

**{¶ 16}** Although the officer did not actually issue a speeding ticket, he witnessed Johnson driving in excess of the posted speed limit, satisfying the reasonable suspicion standard, and the cruiser camera video captured at the time substantiates the officer's observation. *See, e.g., State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d

1204, ¶ 23; Tr. of Hr'g, State's Ex. 1; *State v. Mihelarakis*, 7th Dist. Belmont No. 03 BE 39, 2004-Ohio-3047, ¶ 12; *see also State v. Wineberg*, 2d Dist. Clark No. 97-CA-58, 1998 WL 409021, *4 (Mar. 27, 1998). Based on the foregoing, we concur with the trial court's conclusion that the stop was constitutionally permissible. Johnson's first assignment of error is overruled.

{¶ 17} For his second assignment of error, Johnson contends that:

THE COURT ERRED IN UPHOLDING APPELANT'S LENGTHY DETENTION AND FAILING TO SUPPRESS EVIDENCE GAINED AS THE RESULT OF THIS UNLAWFUL DETENTION.

{¶ 18} Johnson argues that the officer improperly expanded the scope of the *Terry* stop by questioning him about his reason for being at the Budget Inn, his employment and whether he had contraband items in his car. Appellant's Br. 17. In Johnson's view, the officer should have completed the stop and released him once the officer "had determined that [he] was validly licensed, had valid insurance and had no warrants for his arrest." *See id.* at 18.

{¶ 19} A *Terry* stop is subject to the Fourth Amendment requirement that a detention "not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Hence, a "seizure justified only by a police-observed traffic violation" becomes " 'unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Rodriguez v. United States*, ___ U.S. ___, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015), quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). After "the reasonable * * * time for issuing [a] citation has [elapsed], an officer must have

a reasonable articulable suspicion of illegal activity to continue the detention." *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523, ¶ 13 (2d Dist.).

{¶ 20} Here, the officer's initial contact with Johnson lasted scarcely one minute. *Id.* at State's Ex. 1. Johnson did not have his driver's license with him, so he provided his Social Security Number. *Id.* The officer then returned to his cruiser to verify Johnson's identity and run a background check, which revealed that Johnson had been convicted for possession of cocaine and drug paraphernalia in the past. *Id.* at 12-13. Having completed the background check, the officer approached Johnson again at 2:44 a.m., approximately six minutes after the stop began. *Id.* at State's Ex. 1.

{¶ 21} When he returned to Johnson's car, the officer asked Johnson for proof of insurance and permission to search his car, and Johnson consented.[6] *Id.* at 13. Though Johnson's answer is inaudible in the cruiser camera recording, the officer testified that Johnson "said 'sure' and * * * immediately tried to get out of [his] car." *Id.* at 14 and State's Ex. 1. In the recording, the officer can be heard to respond by telling Johnson to "just hang out here for a second" and, as he returned to his cruiser, he added, "we'll get you out of here in just a second." *Id.* at State's Ex. 1. The officer then returned to his cruiser to check Johnson's insurance. *Id.*

{¶ 22} Johnson maintains that the officer unreasonably prolonged the stop by asking him about his purpose for being at the Budget Inn, his employment and whether he had contraband in his car, but the cruiser camera recording establishes that the officer was still in the process of completing the traffic-based mission when Johnson consented

---

[6] The officer made the request at 2:45 a.m. Tr. of Hr'g, State's Ex. 1. The trial court stated incorrectly that the officer made the request at 2:46 a.m. Dec. & Entry Overruling in Part and Granting in Part Def.'s Mot. to Suppress 11.

to a search. *Id.* Moreover, the record includes no evidence of dilatory conduct on the part of the officer.[7] *State v. Matheney*, 2d Dist. Montgomery No. 26876, 2016-Ohio-7690, ¶ 22 (noting that an officer's diligence is a factor for evaluating whether the duration of a traffic stop is reasonable); Tr. of Hr'g, State's Ex. 1. Consequently, Johnson's consent stopped the clock, so to speak, for purposes of the rule articulated by the U.S. Supreme Court in *Caballes* and *Rodriguez*. *See*, *e.g.*, *State v. Scarberry*, 2016-Ohio-7065, 72 N.E.3d 173, ¶ 39 (10th Dist.), citing *Rodriguez*, 135 S.Ct. at 1614, and *Caballes*, 543 U.S. at 407, and *State v. Robinette*, 80 Ohio St.3d 234, 239, 685 N.E.2d 762 (1997); *see also State v Bartone*, 2d Dist. Montgomery No. 25299, 2013-Ohio-2228, ¶ 17 (mentioning case law that a police officer may request a motorist's consent for a vehicle search in the interval of time reasonably necessary to complete a traffic stop and issue a citation). Johnson's second assignment of error is overruled.

**{¶ 23}** For his third assignment of error, Johnson contends that:

> THE TRIAL COURT ERRED IN FINDING THAT OFFICER HALL OBTAINED A VALID CONSENT TO SEARCH AND FAILED TO SUPPRES[S] EVIDENCE GAINED AS THE RESULT OF AN INVALID CONSENT AND AN UNLAWFUL SEARCH.

**{¶ 24}** Johnson argues essentially that he was coerced into consenting to the search of his vehicle. *See* Appellant's Br. 22-24. He complains that the officer "did not clearly articulate the extent of the [intended] search," that his knowledge of the

---

[7] Perhaps, the officer could have obtained Johnson's insurance information when he first spoke with Johnson. Yet, even if the officer's failure to do so could be described as marginally dilatory, the amount of time thereby added to the stop would not have prolonged the stop's total duration beyond that which was reasonably necessary.

"contraband concealed inside [his] vehicle" weighed against a finding of voluntary consent, and that at the moment he "allegedly granted [consent], [he] was not free to leave." *Id.* at 23.

**{¶ 25}** Consent "is an exception to the warrant requirement, [pursuant to which] the State [must] show by clear and positive evidence that * * * consent was freely and voluntarily given." *State v. George*, 2d Dist. Montgomery No. 25945, 2014-Ohio-4853, ¶ 28, citing *State v. Black*, 2d Dist. Montgomery No. 23524, 2010-Ohio-2916, ¶ 33. Whether "consent to search was voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all of the facts and circumstances." *Id.*, citing *Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).

**{¶ 26}** In its discussion of this issue, the trial court noted that "the request for * * * consent [to search] was [made] during the [interval] reasonably necessary to process a traffic citation," meaning that Johnson "was lawfully detained" at that time. Dec. & Entry Overruling in Part and Granting in Part Def.'s Mot. to Suppress 11. Citing our holding in *Bartone*, the court accordingly concluded that Johnson validly consented to the search of his vehicle. *Id.* at 12. The record, particularly the officer's cruiser camera video, supports the court's conclusion. Johnson's third assignment of error is overruled.

**{¶ 27}** For his fourth assignment of error, Johnson contends that:

THE TRIAL COURT ERRED IN INAPPROPRIATELY LIMITING THE SUPPRESSION OF STATEMENTS APPELLANT MADE IN THE ABSENCE OF A *MIRANDA* WARNING.

**{¶ 28}** Not disputing the trial court's determination "that all of [the] statements [he

made] after [being] handcuffed and detained should be suppressed," Johnson asserts that he "was 'in custody' well before" he was secured in the back of the officer's cruiser. Appellant's Br. 25. He argues that, as a result, the "statements he made [when the officer] approach[ed] * * * his vehicle [for the second time]," along with the statements he made while the officer searched his vehicle, should likewise have been suppressed. *Id.* at 25-26.

{¶ 29} Law enforcement officers need not "give *Miranda* warnings to every person that they question, even if the person being questioned is a suspect." (Citations omitted.) *State v. Vineyard*, 2d Dist. Montgomery No. 25854, 2014-Ohio-3846, ¶ 32. Instead, a "*Miranda* warning[] [is] only required for [a] custodial interrogation[]," an example of which is "questioning initiated by [a] police [officer] after [a] person has been taken into custody or otherwise deprived of his freedom to the degree associated with a formal arrest." (Citations omitted.) *Id.*

{¶ 30} Based upon our review of the officer's cruiser camera video, we concur with the trial court's finding that Johnson was "taken into custody or otherwise deprived of his freedom to the degree associated with a formal arrest" only once he was "placed in handcuffs in the company of two [police] officers" and was "escorted by one" of them to the back of a cruiser. *Vineyard*, 2014-Ohio-3846, ¶ 32; Dec. & Entry Overruling in Part and Granting in Part Def.'s Mot. to Suppress 12. Concomitantly, we concur with the court's conclusion that the statements Johnson made before being handcuffed were not subject to suppression. Johnson's fourth assignment of error is overruled.

### III. Conclusion

{¶ 31} We hold that the Kettering Police officer had reasonable suspicion

warranting a *Terry* stop, that the officer did not prolong the stop beyond the time reasonably required to complete the mission of issuing a traffic citation, and that Johnson validly consented to the search of his vehicle. Furthermore, we hold that the trial court appropriately limited the suppression of Johnson's statements to those he made after being handcuffed and secured in a police cruiser. Therefore, we affirm.

. . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Michael J. Scarpelli
Ben M. Swift
Hon. Timothy N. O'Connell